**J. C. CHILDS, Individually and as Next Friend of Daisy Childs, his wife, Appellant,**

v.

**GREENVILLE HOSPITAL AUTHORITY et al., Appellees.**

No. 8046.

Court of Civil Appeals of Texas, Texarkana.

March 21, 1972.

Rehearing Denied April 11, 1972.

Dan R. McCormack, Dallas, for appellant.

John Mackintosh, Jr., Thompson, Knight, Simmons & Bullion, Dallas, W. D. Ralston, Roe & Ralston, Corsicana, for appellees.

CHADICK, Chief Justice.

A summary judgment in the trial court decreed that Daisy Childs and her husband, J. C. Childs, take nothing in their negligence action against Greenville Hospital Authority and H. Beckham, and awarded costs against the Childs. In the prosecution of this appeal the Appellants, Daisy Childs and J. C. Childs, have briefed five points of error. Point IV will be first considered. It is in this language:

"The trial court committed error in granting the motion for summary judgment of the defendant Hospital because the defendant Hospital is not entitled to governmental immunity in this particular case."

The City of Greenville, Texas, exercised authority delegated to it by Tex.Rev.Civ. Stat.Anno. art. 4437e (1966) and created a body "politic and corporate" under the name of Greenville Hospital Authority. This entity was endowed by Sections 3, 14, 16 and 17 of the statute with the characteristics of a tax exempt, non-profit municipal corporation having the capacity to sue and be sued. Property of the Authority is held by it for public purposes only and dedicated exclusively to the use and benefit of the public. The parties agree that there are no Texas cases in which the doctrine of governmental immunity from tort liability has been considered in connection with a hospital authority established pursuant to the mentioned statute.

■ It is a general rule in Texas that exemption from tort liability extends to municipal acts or functions performed as the agent of the state, in furtherance of general law and for the interest of the public at large. 40 Tex.Jur.2d, Municipal Corporations, Sec. 618. Municipal corporations have a rather curious dual character, as Prof. William L. Prosser commented in "Prosser on Torts," 3d Ed. p. 1004:

"On the one hand they are subdivisions of the state, endowed with governmental powers and charged with governmental functions and responsibilities. On the other they are corporate bodies, capable of much the same acts as private corporations, and having the same special and local interest and relations, not shared by the state at large. They are at one and the same time a corporate entity and a government. The law has attempted to distinguish between the two functions, and to hold that insofar as they represent the state, in their 'governmental', 'political', or 'public' capacity, they share its immunity from tort liability, while in their 'corporate', 'private,' or 'proprietary' character they may be liable."

Judge Smedley's opinion in City of Dallas v. Smith, 107 S.W.2d 872 (Tex.Comm'n. App. opin. adpt. 1937), examined case and statutory law as it then existed relative to counties and cities of all classes, and concluded that a city exercised governmental functions when it "maintained and operated a hospital." Gartman v. City of McAllen, 130 Tex. 237, 107 S.W.2d 879 (1937) to like effect was concurrently decided. The principles that led the Supreme Court to adopt Judge Smedley's conclusion apply and operate with equal cogency in this instance and compel a similar conclusion.

Expressed positively, this court holds that the Greenville Hospital Authority performs a governmental function and is immune from tort liability.

■ While insisting that the conclusion just expressed is not warranted, Appellants additionally urge that the Hospital Authority is not immune because (1) the Hospital *functions* primarily for the benefit of persons within the Authority's territorial limit, and because (2) the authorizing statute impliedly waived the Authority's immunity from tort liability by providing that a Hospital Authority would have capacity to sue and be sued. This first proposition was considered in City of Dallas v. Smith, *supra*, and disallowed. See also Howe v. Citizens Memorial Hospital of Victoria County, 426 S.W.2d 882 (Tex. Civ.App. Corpus Christi 1968), reversed on other grounds 436 S.W.2d 115 (Tex.Sup. 1968); Missouri Pacific Railroad Company v. Brownsville Navigation District, 453 S. W.2d 812 (Tex.Sup.1970); State v. Brannan, 111 S.W.2d 347 (Tex.Civ.App. Waco 1937, no writ). The second proposition has been frequently denied in analogous cases. Bennett v. Brown County Water Improvement District No. 1, 153 Tex. 599, 272 S.W.2d 498 (1954); Bexar Metropolitan Water District v. Kuntscher, 274 S.W. 2d 121 (Tex.Civ.App. San Antonio 1954, no writ); Jones v. Texas Gulf Sulphur Co., 397 S.W.2d 304 (Tex.Civ.App. Houston 1965, writ ref'd, n. r. e.); Karling v. Lower Colorado River Authority, 303 S. W.2d 495 (Tex.Civ.App. Austin 1957, writ ref'd, n. r. e.).

Point of Error II takes this form:

"The trial court committed error in granting the motion for summary judgment of the defendant Nurse because there is a question of fact as to whether the Nurse was negligent in failing to follow instructions of Dr. C. B. Weis."

The argument in its entirety under this point is as follows:

"The question here has to do with the duty of the Nurse. Her duty is to examine the patient, report to the doctor, and follow the doctor's instruction. Although the Doctor seems to be in error as to the time of day, his affidavit indicates that his instructions to the Nurse were: 'to have the girl call her doctor in Garland and see what he wanted to do,' while according to Mrs. Childs, the Nurse instructed her that 'the doctor said you will have to go to Dallas.' Certainly this raises a question of fact as to whether the Nurse violated her duty by not properly following the Doctor's instructions."

Appellants do not now contend that a physician-patient relationship existed between the doctor alluded to and Mrs. Childs. Any issue in that respect is settled by the summary judgment proof, as well as by a prior adjudication in Childs v. Weis, 440 S.W.2d 104 (Tex.Civ.App. Dallas 1969, no writ). If Mrs. Beckham breached a duty owing to Mrs. Childs, the breached duty must necessarily be a product of the relationship between these two parties.

An understanding of the nature of *duty* in this context is indispensable. A preeminent scholar-philosopher in the tort field has said:

"* * * [T]he problem of duty is as broad as the whole law of negligence, and * * * no universal test for it ever has been formulated * * *. It is imbedded far too firmly in our law to be discarded, and no satisfactory substitute for it, by which the defendant's responsibility may be limited, has been devised. But it should be recognized that duty * * * is not sacrosanct in itself but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection. * * * [N]o better general statement can be made, than that the courts will find a duty where, in general, reasonable

men would recognize it and agree that it exists."

William L. Prosser, Law of Torts, Sec. 53, 3d Ed.1964.

The factual setting is this: Mrs. Childs, accompanied by friends and relatives, presented herself at the emergency room of the hospital at about two o'clock in the early morning of the 27th day of November, 1966, and asked to be admitted to the hospital. Mrs. Beckham as supervisor on the night shift interviewed Mrs. Childs at the hospital emergency room. Mrs. Beckham's routine procedure in such situations was to "get some visual picture of the patient's condition," and fill in a prepared form showing the applicant for admission's name, address, and treating doctor. Additionally, according to the hospital administrator, "a nurse on such occasion would be expected to employ such resuscitative measures as would be necessary to maintain vital signs on critical patients until the doctor would come." On this occasion, besides filling in the form, and ascertaining from her that Mrs. Childs was seven months pregnant, Mrs. Beckham made an examination of Mrs. Childs sufficient to determine that she was having contractions associated with childbirth, two or three minutes apart, and of 30 seconds duration, and a test disclosed a "small amount of bright red *show*."

Mrs. Beckham telephoned the doctor assigned to emergency room duty, the only person privileged to admit patients at that time, and gave him the information disclosed by her examination of Mrs. Childs, the test made, and the application form data. In her deposition Mrs. Beckham says that the doctor said to her: "Tell the patient to get in touch with her own doctor." The doctor's affidavit says: "I told the nurse * * * to have the girl call her doctor at Garland and see what he wanted her to do." At the conclusion of the telephone conversation, Mrs. Beckham

denied Mrs. Childs entry into the hospital and collected a $2.00 emergency room fee from her. Mrs. Childs testified that Mrs. Beckham told her that the doctor said for her, Mrs. Childs, to go see her own doctor, whose place of practice was Garland, Texas, and see what he wanted her to do. Mrs. Childs said that she was hesitant, but that Mrs. Beckham assured her that she would have time. On leaving the hospital, Mrs. Childs returned to her father's home near Lone Oak, where she was visiting, and after making some preparation left that community for Sulphur Springs, Texas. She gave birth to a child while enroute. The facts thereafter do not bear upon the question at hand.

The doctor on call performed an administrative function for the hospital in determining admissions. The Nurse in this instance acted simply as the fact gatherer who supplied the doctor on call with preliminary information and as the doctor's spokesman to the applicant. Upon application for admission the Nurse clearly had a duty to call the doctor and then report to the applicant the decision of the doctor on the application; thus, the Nurse had a duty to report to Mrs. Childs that the doctor had not approved her application for admission. It is more difficult, bearing in mind that there is no physician-patient relationship, to find a reasonable basis for duty on the part of the nurse to relay the doctor's apparent nonmedical and gratuitous advice, instruction or suggestion to Mrs. Childs that she call her doctor and see what he wanted her to do. Yet, the doctor's remarks may be construed in the hospital emergency room aura as a tentative denial of admission, subject to change if the treating doctor recommended hospitalization and as instructions from the doctor to be conveyed by the nurse to the applicant. It is shown that the nurse did undertake to relay the doctor's remarks, and according to Mrs. Childs, failed to do so accurately. The chief conflict in the evidence is whether the message related by

the Nurse was for Mrs. Childs to *"go see"*, or to *"get in touch with"* her own doctor and see what he wanted her to do.

■ Having undertaken to relay the doctor's statement, under the circumstances shown, did the Nurse breach a duty she individually owed the applicant for admission by not accurately repeating the doctor's remarks? While there are some elements that suggest a duty on the basis of the Good-Samaritan-who-bungled theory, the more persuasive basis for finding a duty lies in the employment and position of Mrs. Beckham. Reasonable men would recognize and agree, so it seems to this court, that Mrs. Beckham's relation to Mrs. Childs was attendant with responsibility, and that a person in the position of Mrs. Beckham had a duty, when all the circumstances are considered, of accurately reporting to Mrs. Childs the message the doctor told her to deliver in connection with the denial of the application for admission. Whether she reported accurately or inaccurately, and whether failure to accurately report constitutes negligence are questions of fact for the jury. The facts developed in connection with the motion for summary judgment show that Mrs. Childs did not heed the message conveyed to her. Whether or not she would have acted differently had she received an accurate version of the doctor's message rather than the message she claims she did receive is not shown by the record.

Appellant's Point of Error II must be sustained, and Point IV overruled. Points I, III and V become immaterial and discussion is omitted. The judgment of the trial court is affirmed in part and reversed and remanded in part. As it pertains to Mrs. Beckham, the case is reversed and remanded for trial. Considering the record in all of its ramifications, it appears equitable that the cost of this appeal should be taxed one-fourth against Mrs. Beckham and three-fourths against the Appellants. It is so ordered.