**SATTERFIELD & PONTIKES CONSTRUCTION, INC.,**
Appellant,

v.

**IRVING INDEPENDENT SCHOOL DISTRICT, Appellee.**

No. 05–03–00004–CV.

Court of Appeals of Texas, Dallas.

Sept. 26, 2003.

Rehearing Overruled Jan. 12, 2004.

**64**

Donald F. Hawbaker, Timothy Dwayne Matheny, Jeffrey A. Ford, Ford, White & Nassen, P.C., Dallas, for Appellant.

W. Andrew Messer, Boyle & Lowry, L.L.P., James W. Deatherage, Jim & Associates, PC, Irving, for Appellee.

Before Justices JAMES, FRANCIS, and LANG.

## OPINION

Opinion by Justice FRANCIS.

In this breach of contract case against the Irving Independent School District, we must decide whether the Legislature intended to waive the District's immunity from suit by enacting section 11.151 of the Texas Education Code. Because the language used in section 11.151 does not clearly and unambiguously indicate waiver, we affirm the trial court's order dismissing Satterfield & Pontikes Construction Inc.'s claims for want of jurisdiction.

### BACKGROUND

The District contracted with Satterfield for the construction of a new middle school. During construction, the project experienced certain delays. Satterfield filed this lawsuit alleging the District failed to pay delay damages and extend completion time for the project in accordance with certain contract provisions.

The District moved to dismiss the lawsuit for want of jurisdiction asserting it was immune from suit. In response, Satterfield filed its first amended petition asserting the Legislature had waived the District's immunity by enacting section 11.151 of the Texas Education Code, which allows the District to "sue and be sued." The trial court granted the District's plea to the jurisdiction. Satterfield appeals.

### DISCUSSION

■ Governmental immunity protects governmental entities from lawsuits for damages absent legislative consent. *See*

*Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405 (Tex.1997). The doctrine is comprised of two distinct concepts: (1) immunity from suit (barring a lawsuit unless the Legislature expressly gives its consent to suit), and (2) immunity from liability (protection from judgments even if the Legislature has expressly given its consent to the suit). *See id.* Although a governmental entity waives immunity from liability when it contracts with private citizens, immunity from suit is not waived by merely entering into a contract. *See Catalina Dev., Inc. v. County of El Paso*, 121 S.W.3d 704, 705 (Tex.2003); *Gen. Serv.'s Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 594 (Tex.2001). Instead, express consent is required to show that immunity from a breach of contract suit has been waived. *See Travis County v. Pelzel & Assocs. Inc.*, 77 S.W.3d 246, 248 (Tex.2002). This consent must be expressed by clear and unambiguous language. TEX. GOV'T CODE ANN. § 311.034 (Vernon Supp.2003); *Pelzel*, 77 S.W.3d at 248.

■ We review de novo the trial court's ruling on a plea to the jurisdiction based on immunity from suit. *See Tex. Natural Res. Conserv. Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex.2002). Where, as here, there was no evidence presented to the trial court on the jurisdictional issue, we look solely to the pleadings to determine whether the trial court's jurisdiction was properly invoked. *See Tarkington Indep. Sch. Dist. v. Aiken*, 67 S.W.3d 319, 326 (Tex.App.-Beaumont 2002, no pet.). Satterfield's pleadings must establish, either by reference to a statute or express legislative permission, the Legislature's consent to its lawsuit, or immunity from suit will deprive the trial court of subject matter jurisdiction. *See Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex.1999). When determining whether

the Legislature has clearly and unambiguously waived immunity from suit, we generally resolve any ambiguity in favor of retaining immunity. *See Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 697 (Tex.2003).

■ Satterfield pleaded the "sue and be sued" language contained in section 11.151 clearly expresses the Legislature's intention to waive the District's immunity from suit in breach of contract actions. We do not agree. The statutory provision we are called upon to construe is located in the education code under a subchapter entitled "Powers and Duties of Board of Trustees of Independent School District." It provides as follows:

> § 11.151 In General
>
> (a) The trustees of an independent school district constitute a body corporate and in the name of the district may acquire and hold real and personal property, sue and be sued, and receive bequests and donations or other moneys or funds coming legally into their hands.

Tex. Educ.Code Ann. § 11.151(a) (Vernon 1996).

At least one commentator has suggested that because "sue and be sued" language originated in the corporate law context, these provisions can easily be read as a designation to give a particular entity a legal existence in the courts. George C. Kraehe, *"There's Something About Cities": Understanding Proprietary Functions of Texas Municipalities and Governmental Immunity,* 32 Tex. Tech. L.Rev. 1, 35–36 (2000). We agree. In fact, we recently reached a similar conclusion in *City of Dallas v. Reata Construction Corp.,* 83 S.W.3d 392, 399 (Tex.App.-Dallas 2002, pet. filed). In *Reata,* the subcontractor contended language in the local government code that the City could "plead and be impleaded in any court" and a city charter provision stating the City could "sue and be sued" waived the City's immunity from its negligence suit. *Id.* at 398. In rejecting the subcontractor's claim, we noted that such language merely "speak[s] to the City's capacity to sue and its capacity to be sued when immunity *has* been waived." *Id.*

■ We likewise view section 11.151 as acknowledging the District's capacity to sue and its capacity to be sued once immunity has been waived. A school district has only those powers granted to it by the Legislature. *See Barber v. Colorado Indep. Sch. Dist.,* 901 S.W.2d 447, 453 (Tex. 1995). The sue and be sued language merely recognizes the District's ability to utilize the courts as a legal entity, just as the remainder of section 11.151 authorizes the District to hold property, and receive bequests, donations, and other funds. At a minimum, we conclude section 11.151(a) is ambiguous as to whether it addresses the District's capability to sue and be sued as an entity or is an expression of the Legislature's intent to waive the District's immunity from suit. We are required to construe the statute in a manner that retains the District's immunity. *See Taylor,* 106 S.W.3d at 697.

In reaching this conclusion, we reject Satterfield's assertion that *Missouri Pacific Railroad Co. v. Brownsville Navigation District,* 453 S.W.2d 812 (Tex.1970) mandates a different result. In *Missouri Pacific,* the railway sought indemnity from the navigation district for the railway's liability in a wrongful death suit based on a "written track agreement" prohibiting the district from allowing certain objects to be placed near the track. *Id.* at 812–13. Although generally acknowledging the district's immunity from suit, the court construed a "sue and be sued" provision in a 1925 statute creating the district as a gen-

eral consent to suit by the Legislature thereby authorizing the railway's suit against the navigation district. *Id.* at 813.

As support for its holding, the *Missouri Pacific* court noted specifically that suits against counties had been held to be authorized by statutes that were significantly less straight forward on the waiver of immunity issue such as those: (1) merely requiring the filing of a claim before institution of suit, (2) providing for county inhabitants to serve as jurors or witnesses, and (3) prohibiting the issuance of an execution on a judgment against a county. *Id.* The court held the "sue and be sued" statute was "quite plain and gives general consent for District to be sued in the courts of Texas in the same manner as other defendants." *Id.* Our research has revealed *Missouri Pacific* as the first and only time the Texas Supreme Court has directly addressed the issue of whether a "sue and be sued" statute constitutes a waiver of immunity from suit. More importantly, the supreme court has since departed from the logic of *Missouri Pacific* in the three decades following that decision.

Ten years after *Missouri Pacific,* the supreme court held that any waiver of immunity from suit must be expressed by the Legislature in clear and unambiguous language. *Duhart v. State,* 610 S.W.2d 740, 742 (Tex.1980). That holding has been consistently reaffirmed. *See* TEX. GOV'T CODE ANN. § 311.034; *Taylor,* 106 S.W.3d at 696; *Pelzel,* 77 S.W.3d at 248; *IT–Davy,* 74 S.W.3d at 854; *Fed. Sign,* 951 S.W.2d at 405; *City of La Porte v. Barfield,* 898 S.W.2d 288, 291 (Tex.1995).

More recently, in a construction contract action similar to the one before us, the supreme court applied the clear and unambiguous standard to hold a presentment statute did not waive a county's immunity from suit. *See Pelzel,* 77 S.W.3d at 249.

The statute in *Pelzel* provided "a person may not sue on a claim against a county unless the person has presented the claim to the commissioners court and the commissioners court has neglected or refused to pay all or part of the claim." The *Pelzel* court acknowledged *Missouri Pacific's* holding by stating that "sue and be sued" language *"arguably* show[s] intent to waive sovereign immunity" *Id.* (emphasis added). But *Pelzel* also noted there were no cases to support *Missouri Pacific's* assertion that a county's immunity from suit had been held to be waived by statutes requiring the filing of a claim before institution of suit. *Id.* at 251. After *Pelzel,* the rationale behind *Missouri Pacific's* holding, which was based in part on an understanding that a presentment statute waived immunity from suit, has been called into question.

Similarly, applying the clear and unambiguous standard in a wrongful death case, the supreme court has also concluded the Legislature did not waive a state hospital's immunity from suit by enacting the patient's bill of rights which provides "a person who has been harmed by a violation [under this statute] may sue for injunctive relief, damages or both." *See Taylor,* 106 S.W.3d at 700. Both *Pelzel* and *Taylor* listed several examples of clear and unambiguous expressions of the Legislature's intent to waive immunity from suit. *Taylor,* 106 S.W.3d at 697 n. 6; *Pelzel,* 77 S.W.3d at 249. Notably, neither of these supreme court cases presented a "sue and be sued" statute as an example of a clear and unambiguous waiver of immunity from suit.

We acknowledge several appellate courts have summarily concluded "sue and be sued" language expresses the Legislature's general consent to suit and waives a governmental entity's immunity from suit based on *Missouri Pacific's* holding. *See,*

*e.g., Goerlitz v. City of Midland,* 101 S.W.3d 573, 577 (Tex.App.-El Paso 2003, pet. filed) (city charter provides the city may sue and be sued); *Tarrant Co. Hosp. Dist. v. Henry,* 52 S.W.3d 434, 448 (Tex. App.-Fort Worth 2001, no pet.) (health and safety code provides the board of managers of a hospital district statute may sue and be sued); *Welch v. Coca–Cola Enter., Inc.,* 36 S.W.3d 532, 538 (Tex.App.-Tyler 2000, pet. withdrawn) (education code provides the school district trustees may sue and be sued); *Bates v. Tex. State Tech. Coll.,* 983 S.W.2d 821, 827 (Tex.App.-Waco 1998, pet. denied) (education code provides college board may sue or be sued); *Alamo Comm. Coll. Dist. v. Obayashi Corp.,* 980 S.W.2d 745, 747–48 (Tex.App.-San Antonio 1998, pet. denied) (education code provides independent school district trustees can sue or be sued); *Dillard v. Austin Indep. Sch. Dist.,* 806 S.W.2d 589, 594 (Tex.App.-Austin 1991, writ denied) (op. on reh'g) (education code provides school district trustees may sue and be sued); *Fazekas v. Univ. of Houston,* 565 S.W.2d 299, 302 (Tex.Civ.App.-Houston [1st Dist.] 1978, writ ref'd n.r.e) (education code provides University of Houston board may sue and be sued). None of these cases, however, addresses or even acknowledges the changes that have taken place in the law relating to waiver of immunity from suit issues since *Missouri Pacific.*

Applying the well-settled principles evolved since *Missouri Pacific,* we hold that because section 11.151 is not a clear and unambiguous waiver of the District's immunity from suit, the trial court did not err in dismissing Satterfield's breach of contract claims for want of jurisdiction. In reaching our conclusion, we necessarily reject Satterfield's contention that whether "sue or be sued" language constitutes a clear and unambiguous waiver of immunity from suit depends on whether the underlying claims asserted sound in tort or in

contract. We are aware of no case that has made such a distinction. Cases have routinely cited both tort and contract causes of action for various propositions relating to legislative waivers of immunity from suit. The fundamental concepts, including the requirement of clear and unambiguous language, have been applied equally to both types of actions. Satterfield has not advanced any reason to distinguish between cases sounding in tort and those sounding in contract.

The Legislature has repeatedly demonstrated that it knows how to waive sovereign immunity in clear and unambiguous language. *Taub v. Harris Co. Flood Control Dist.,* 76 S.W.3d 406, 410 (Tex.App.-Hous. [1st Dist.] 2001, no pet.). Because section 11.151 of the education code does not clearly and unambiguously waive immunity from suit for breach of contract claims against independent school districts, we affirm the trial court's judgment dismissing Satterfield's claims for want of jurisdiction.

LANG, J. dissenting.

Dissenting Opinion by Justice LANG.

The issue in this appeal is whether the Legislature, by including "sue and be sued" language in a statute outlining the powers and duties of the board of trustees of an independent school district, waived the school district's governmental immunity to a suit for breach of contract. The majority today affirms the trial court's ruling that Irving Independent School District ("the District") is immune from suit on claims that it breached a construction contract with Satterfield & Pontikes Construction, a private litigant. I respectfully disagree with the majority's opinion, which sets forth its view of the law relating to governmental immunity from suit on contract claims. Based upon my reading of

the decisions of the Texas Supreme Court, I would reverse the trial court's ruling. I respectfully dissent.

Because I am not in accord with the majority in its decision or on the reading of the case law which supports its decision, I believe it is appropriate, during the discussion of my views, to chronicle the law on governmental immunity as pertinent to this case. Accordingly, the following is offered for consideration.

## THE ROOTS OF GOVERNMENTAL IMMUNITY IN TEXAS

Sovereign immunity [1] was generated from the common law, not legislative enactment. *See Hosner v. DeYoung*, 1 Tex. 764, 769 (1847); *Bd. of Land Comm'rs v. Walling*, Dallam 524, 1843 WL 3919 (Tex. 1843); *see also City of Amarillo v. Martin*, 971 S.W.2d 426, 427 (Tex.1998). Over time, the doctrine of immunity has been divided into several distinct areas of law. For example, some case law discusses immunity in a general sense. *See, e.g., Hosner*, 1 Tex. at 769; *Tex. Worker's Comp. Comm'n v. Garcia*, 862 S.W.2d 61, 72 (Tex. App.-San Antonio 1993), *rev'd on other grounds*, 893 S.W.2d 504 (1995) (referring generally to the concept of immunity founded on the principle that "the king can do no wrong"). Other statutes and cases deal with immunity as it relates exclusively to tort claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021 (Vernon Supp.2003) (the "Texas Tort Claims Act"); *see also Shade v. City of Dallas*, 819 S.W.2d 578, 582 (Tex.App.-Dallas 1991, no writ) (government enjoys sovereign immunity for its

negligent acts except to extent the Tort Claims Act waives that immunity); *see generally* Michael Shaunessy, *Sovereign Immunity and the Extent of the Waiver of Immunity Created By the Texas Tort Claims Act*, 53 BAYLOR L.REV. 87 (2001). Still others describe the doctrine as it relates to injunctive and equitable relief, *see Cobb v. Harrington*, 144 Tex. 360, 190 S.W.2d 709, 712 (1945) (suit for declaratory judgment); *Bagg v. Univ. of Tex. Med. Branch*, 726 S.W.2d 582, 584–85 (Tex.App.-Houston [14th Dist.] 1987, writ ref'd n.r.e.) (suit for injunctive relief), or as it relates to premises liability claims, *see* TEX. CIV. PRAC. & REM.CODE ANN. § 101.022; *see also Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 612 (Tex.2000). Finally, and most important to our considerations in this case, courts have defined the nature of immunity respecting claims brought by private citizens against the State for breach of contract. *See Mo. Pac. R.R. Co. v. Brownsville Navigation Dist.*, 453 S.W.2d 812, 813 (Tex.1970); *see also Catalina Dev., Inc. v. County of El Paso*, 111 S.W.3d at 155 (Tex. 2003); *Tex. A & M Univ.-Kingsville v. Lawson*, 87 S.W.3d 518, 521 (Tex.2002); *Travis County v. Pelzel & Assocs., Inc.*, 77 S.W.3d 246, 248 (Tex.2002); *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 854 (Tex.2002); *Gen. Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 594 (Tex.2001); *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405 (Tex.1997). Of course, litigation in the area of governmental immunity described above has defined

---

1. It appears that courts often use the terms "sovereign immunity" and "governmental immunity" interchangeably. The Corpus Christi court of appeals recently noted the distinction in *Nueces County v. Hoff*, 105 S.W.3d 208, 211 n. 3 (Tex.App.-Corpus Christi 2003, no pet. h.). "Sovereign immunity" refers to the State's immunity from suit and liability, while "governmental immunity" protects political subdivisions of the State, including counties, cities, and school districts. *Id.* I will generally refer to the alleged immunity in this case as governmental. However, if case authority is cited that uses the term "sovereign," I will use that court's terminology.

the breadth and depth of the immunity as well as the waiver of such immunity.

Governmental immunity as to contracts encompasses two distinct concepts. First, the State retains immunity from *suit*, unless there exists legislative consent, even when the State's liability is not disputed. *Fed. Sign*, 951 S.W.2d at 405 (citing *Mo. Pac. R.R.*, 453 S.W.2d at 813). The State must expressly give its consent to be sued "by clear and unambiguous language," and such consent may be by statute or by legislative resolution. *Id.* at 405 (citing *Univ. of Tex. Med. Branch v. York*, 871 S.W.2d 175, 177 (Tex.1994); *Duhart v. State*, 610 S.W.2d 740, 742 (Tex.1980)).

The second distinct concept is that the State retains immunity from *liability* even though the Legislature may have granted consent to the suit. *Id.* (citing *Mo. Pac. R.R.*, 453 S.W.2d at 813). As such, the State neither creates nor admits liability by granting permission to be sued. *Id.* "However, when the State contracts, the State is liable on contracts made for its benefit as if it were a private person." *Id.* Thus, the supreme court has recognized that when the State contracts with private citizens, it waives immunity from *liability*. Yet, the issue of whether the Legislature has waived the State's immunity from *suit* on the contract is often litigated. *Id.* at 405–06; *see also Catalina Dev.*, 111 S.W.3d at 155; *Lawson*, 87 S.W.3d at 520–21; *Pelzel*, 77 S.W.3d at 248; *IT–Davy*, 74 S.W.3d at 854; *Little–Tex*, 39 S.W.3d at 594. Of course, it is this precise issue of whether The District is immune from suit that is the subject of the appeal before this Court.

## THE *MISSOURI PACIFIC* CASE AND THE *FEDERAL SIGN* PROGENY

The majority rejects Satterfield's argument that the supreme court's decision in *Missouri Pacific Railroad Co. v. Browns-*

*ville Navigation District*, 453 S.W.2d 812 (Tex.1970), is controlling authority and that The District is not immune from suit. I respectfully suggest that the effect of the majority's decision is to treat the decision in *Missouri Pacific* as if it had been overruled by stating that "the supreme court has since departed from the logic of *Missouri Pacific* in the three decades following that decision." Contrary to the majority's view, I believe that the Texas Supreme Court has carefully protected and described the continued applicability of *Missouri Pacific*.

### A. *Missouri Pacific*

In 1970, the supreme court issued its succinct opinion in *Missouri Pacific*. The case arose when a brakeman for Missouri Pacific Railroad died after being knocked from a train ladder by a crane that had been left too close to the track. The brakeman's beneficiaries sued Missouri Pacific, which filed a cross-action for indemnity against the Brownsville Navigation District. Missouri Pacific claimed the navigation district had entered into a contract with Missouri Pacific where the district agreed not to allow construction or placement of any obstruction which would violate any law or regulation respecting clearance or safety margins in the vicinity of railroad tracks. The trial court sustained the district's plea to the jurisdiction on the grounds that the district was a subdivision of the State and that consent to its being sued had not been given. The court of civil appeals affirmed. *Mo. Pac. R.R.*, 453 S.W.2d at 813.

The supreme court noted that the navigation district was governed by a provision of a 1925 act that provided as follows: "All navigation districts established under this Act may, by and through the navigation and canal commissioners, *sue and be sued* in all courts of this State in the name of such navigation district, and all courts of

this State shall take judicial notice of the establishment of all districts." *Id.* (emphasis added). At issue was whether the phrase "sue and be sued" was a waiver of the district's immunity from suit. The court concluded quite unequivocally: "In our opinion [the navigation district statute] is *quite plain* and *gives general consent for District to be sued* in the courts of Texas in the same manner as other defendants." *Id.* (emphasis added). In so holding, the court rejected the district's argument that other statutes more clearly expressed the Legislature's consent to suit. *Id.* More recently, the supreme court recalled that in *Missouri Pacific*, it had "held that a statute that provided that the Navigational District could 'sue and be sued' met the legislative permission requirement." *See Fed. Sign,* 951 S.W.2d at 408.

## B. The *Federal Sign* Progeny

Since the delivery of its *Missouri Pacific* decision over thirty-three years ago, the supreme court has cited the case only eight times. These cases frame the doctrine of governmental immunity respecting suits against the State for breach-of-contract claims by private citizens.[2] However, the cases decided after *Missouri Pacific* did not address statutes containing "sue and be sued" language. Accordingly, *Missouri Pacific* is subsisting, authoritative case law which stands for the proposition that "sue and be sued" language satisfies the legislative permission requirement for waiver of immunity from suit. The cases that cite *Missouri Pacific* bear this out.

### 1. *Federal Sign*

The first case citing *Missouri Pacific* which dealt with immunity respecting a breach of contract claim was *Federal Sign v. Texas Southern University,* 951 S.W.2d 401 (Tex.1997). The supreme court first discussed the separate concepts of immunity from suit and immunity from liability. In its discussion of immunity from suit, the court reaffirmed that the State may consent to suit by either statute or legislative resolution, but in any event the legislative consent must be by "clear and unambiguous language." *Id.* at 405. Later in the opinion, the court briefly discussed *Missouri Pacific* and summarized that case's holding as establishing that "sue and be sued" language "met the legislative permission requirement." *Id.* at 408 (citing *Mo. Pac. R.R.,* 453 S.W.2d at 813). This led to three points in the court's conclusion: (1) when the State contracts with private citizens, it only waives immunity from liability; (2) legislative consent is still required in order for a private citizen to sue the State on a breach of contract claim; and (3) the act of contracting alone does not waive the State's immunity from suit. *See id.* Applying that law to the facts of the case, the court determined that Federal Sign, the private litigant in the case, did not receive permission to sue

**2.** Three of the eight cases citing *Missouri Pacific* are not relevant to the present discussion of waiver of immunity. *Missouri Pacific* was cited in *Texas Department of Transportation v. Jones,* 8 S.W.3d 636 (Tex.1999), in a discussion of the difference between immunity from suit and immunity from liability. *Id.* at 638. The issue before the court in *Jones* was whether immunity from suit was properly challenged in a plea to the jurisdiction. The court held it was. *Id.* In *Texas Education Agency v. Leeper,* 893 S.W.2d 432 (Tex.1995), Justice Gonzalez cited *Missouri Pacific* in his dissent criticizing the court's allowance of an award for attorney's fees in a suit for declaratory judgment brought by home school parents and curriculum providers. *Id.* at 447 (Gonzalez, J., dissenting). Finally, *Guaranty Petroleum Corp. v. Armstrong,* 609 S.W.2d 529 (Tex.1980), cited *Missouri Pacific* in support of its conclusion that a water district is a political subdivision with authority to enter into a lease. *Id.* at 530. These cases are omitted from the above discussion of *Missouri Pacific* and the *Federal Sign* progeny.

Texas Southern University, a state institution. *Id.* Therefore, the court affirmed the court of appeals's holding that sovereign immunity precluded suit.

Two statements in *Federal Sign* seemed to limit the court's holding. *See* L. Katherine Cunningham & Tara D. Pearce, *Contracting With the State: The Daring Five—The Achilles' Heel of Sovereign Immunity?*, 31 St. Mary's L.J. 255, 269 (1999). First, footnote one in the majority opinion expressly limited the holding to the facts before it, stating, "We do not attempt to decide this issue in any other circumstances other than the one before us today. There may be other circumstances where the State may waive its immunity by *conduct other than simply executing a contract* so that it is not always immune from suit when it contracts." *Fed. Sign*, 951 S.W.2d at 408 n. 1 (emphasis added). Second, Justice Hecht's concurrence, in which three other justices joined, attempted to make clear that the court's holding was a narrow one: the State does not waive immunity from suit for breach of contract, simply by entering into the contract, before the other party tenders *full performance. See id.* at 412–13 (Hecht, J., concurring) ("We do not attempt to decide such hypotheticals today, but they do suggest that the State may waive immunity by *conduct other than simply executing a contract,* so that it is not always immune from contract suits." (emphasis added)).

Justice Enoch, along with Justices Spector and Abbott, dissented from the holding in *Federal Sign.* The dissent suggested the best approach to sovereign immunity was that the State waives both immunity from liability *and* immunity from suit when it enters into a contract with a private party. *Id.* at 417 (Enoch, J., dissenting). As to the holding in *Missouri Pacific,* the dissent noted that case established that a statute enabling a state agency to " 'sue or be sued' expressly waived the State's immunity from suit." *Id.* (citing *Mo. Pac. R.R.,* 453 S.W.2d at 813). The *Missouri Pacific* holding, however, did not answer the issue presented in *Federal Sign* of whether the State waived its immunity from suit for breach of contract simply by entering into the contract. *Id.*

### 2. *Little–Tex*

Almost four years later, the supreme court issued its opinion in *General Services Commission v. Little–Tex Insulation Co., Inc.,* 39 S.W.3d 591 (Tex.2001). At issue was the question the court left open in *Federal Sign:* whether the State may waive immunity by conduct other than simply executing a contract. *Id.* at 593. The opinion actually involved two separate cases. The first was a general contractor suing Texas A & M University for additionally incurred expenses under a construction contract. *Id.* at 594. The second involved a dispute over the performance under a contract by an asbestos-removing company and the General Services Commission when the project was thirty percent complete. *Id.* Both private litigants conceded that the act of contracting alone did not waive the State's immunity from suit, but both argued that the State had waived immunity by accepting benefits under the contract. *Id.* at 595. Thus, both plaintiffs cited *Federal Sign's* footnote one and Justice Hecht's concurrence to support their arguments that the court had held *only* that the State did not waive immunity from suit by simply entering into the contract but that in their cases the State had done something *more* to waive immunity, i.e., they had *accepted benefits* under the contract. *Id.* The court cited *Missouri Pacific* only once in its discussion about the concept that governmental immunity encompassed the separate principles of immunity from liability and

immunity from suit. *Id.* (citing *Mo. Pac. R.R.*, 453 S.W.2d at 813).

The *Little–Tex* court recognized that the language in *Federal Sign* might have opened the door for the plaintiffs' arguments. *Id.* However, the court once again held that the State was entitled to immunity from suit. *Id.* at 598. This holding was premised on the passage in 1999 of article 2260 of the Texas Government Code, which retained sovereign immunity from suit over certain breach-of-contract claims but which provided for an administrative procedure to resolve those claims. *See* TEX. GOV'T CODE ANN. §§ 2260.001–.108 (Vernon 2000). Both plaintiffs argued that chapter 2260 did not apply because the State's conduct waived immunity. Thus, obtaining legislative consent was not necessary. *Little–Tex*, 39 S.W.3d at 596. The court rejected this argument, stating, "[W]e are not inclined in this case to impute knowledge to the Legislature of decisions establishing a waiver-by-conduct exception to immunity when the Legislature made its intent clear through the words it choose [sic] in Chapter 2260." *Id.* at 597. The court further stated that "there is but one route to the courthouse for breach-of-contract claims against the State, and that route is through the Legislature." *Id.*

The ultimate holding was that the State does not waive its immunity for breach of contract by accepting the benefits of the contract. *Id.* Therefore, the *Little–Tex* decision added to *Federal Sign*, and it was clear afterwards that the State does not waive its immunity from suit in a breach of contract case by (1) simply entering into the contract, or (2) by accepting *some* benefits under the contract. However, the court carefully noted in *Little–Tex: "Absent special statutory consent to sue*, a party may not pursue a breach-of-contract claim without participating in Chapter 2260's administrative process." *Id.* at 598

(emphasis added). Justice Enoch dissented, once again arguing that the State waives its immunity from both liability and suit when it authorizes its agencies to enter into contracts. *See id.* at 604 (Enoch, J., dissenting).

### 3. *IT–Davy*

The next governmental immunity case involving breach of contract was *Texas Natural Resource Conservation Commission v. IT–Davy*, 74 S.W.3d 849 (Tex. 2002). In that case, a general contractor sued a state agency for expenses incurred in cleaning a hazardous waste site in Houston. There was no dispute that the contractor had fully performed under the contract. Rather, the dispute was over "equitable adjustments" provided for in the contract after the contractor claimed he had incurred additional expenses and lost profits stemming from materially different site conditions. *Id.* at 851. One of the contractor's arguments, based on the majority's footnote one and Justice Hecht's concurrence in *Federal Sign*, was that the state agency had waived its immunity from suit by *fully* accepting benefits under the contract. *Id.* at 856. The court once again rejected the argument, refusing to "fashion . . . a waiver-by-conduct exception in a breach-of-contract suit against the State." *Id.* at 857. The court ultimately rejected each of the contractor's arguments and held that the state agency was entitled to governmental immunity. *Id.* at 860. *Missouri Pacific* was cited only two times, both in support of the proposition that it is the Legislature's sole province to waive or abrogate sovereign immunity. *See id.* at 853, 857 (citing *Mo. Pac. R.R.*, 453 S.W.2d at 813–14).

Justice Hecht, joined by Chief Justice Phillips and Justices Owen and Jefferson, concurred in the result, but refused to join the "broad language" in the majority opinion that seemed to indicate that the

State is *always* immune from suit absent legislative consent. *Id.* at 860 (Hecht, J., concurring). Justice Hecht's concurrence acknowledged that he had left open the possibility in *Federal Sign* that the situation in that case might have been different if Texas Southern University had acknowledged that Federal Sign had fully complied with the contract but refused to pay the agreed price. *See id.* (citing *Fed. Sign*, 951 S.W.2d at 412 (Hecht, J., concurring)). Justice Hecht explained that the *Federal Sign* "hypothetical supposed a government agency that chiseled a contractor just because it could get away with doing so." *Id.* Nevertheless, the concurring opinion stated that it did not answer the question in *Federal Sign* and did not need to answer it in *IT–Davy* because both involved "ordinary contract disputes." *IT–Davy*, 74 S.W.3d at 861 (Hecht, J., concurring). Finally, Justice Enoch dissented, again arguing that the State waives its immunity from liability and suit when it enters into a contract. *Id.* at 863 (Enoch, J., dissenting).

### 4. *Pelzel & Associates, Inc.*

The next breach-of-contract case involving waiver of immunity was *Travis County v. Pelzel & Associates, Inc.*, 77 S.W.3d 246 (Tex.2002). In that case, Travis County contracted with Pelzel to construct an office building. Pelzel substantially completed the building, and the county accepted and occupied the building thereafter. The county paid the contract price, minus $5500 in delay costs provided for by the contract's liquidated damages clause. Pelzel, claiming it was owed over $130,000, presented its claim to the county commissioner's court pursuant to section 89.004 of the local government code, which provides the procedure for presenting claims against a county. *See* Tex. Local Gov't Code Ann. § 89.004 (Vernon Supp.2003). After the county refused to pay the claim, Pelzel filed suit in district court, which denied the county's plea to the jurisdiction. *Pelzel*, 77 S.W.3d at 247. The court of appeals affirmed on two grounds, holding that (1) the county waived immunity from suit by its conduct, and (2) section 89.004 conferred on Pelzel a right to sue the county after Pelzel presented its claim to the commissioners court and that claim was rejected. *See Travis County v. Pelzel & Assocs., Inc.*, 30 S.W.3d 662, 669 (Tex. App.-Austin 2000), *rev'd*, 77 S.W.3d 246 (Tex.2002).

Section 89.004 provided that "[a] person may not sue on a claim against a county unless the person has presented the claim to the commissioners court and the commissioners court has neglected or refused to pay all or part of the claim." Tex. Local Gov't Code Ann. § 89.004(a). Because this was Pelzel's lone basis for statutory waiver of immunity, the sole issue before the supreme court on statutory waiver was whether the Legislature, through section 89.004, clearly and unambiguously waived the county's immunity from suit. *Pelzel*, 77 S.W.3d at 248–49. The court held it did not. *Id.* at 249.

First, the court stated that section 89.004 "stood in stark contrast to other statutes that contain language which does clearly and unambiguously waive sovereign immunity from suit," such as the Texas Tort Claims Act,[3] the Private Real Property Rights Preservation Act,[4] and the Whistleblower Act.[5] *Id.* Instead, the county

---

**3.** *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.025(a) (Vernon 1997).

**4.** *See* Tex. Gov't Code Ann § 2007.004(a) (Vernon 2000).

**5.** *See* Tex. Gov't Code Ann. § 554.0035 (Vernon Supp.2002).

presentment statute "merely establishes a condition precedent to suit." *Id.* Second, the court stated that its construction of the statute as a condition precedent was supported by the statute's purpose, which was to notify the commissioners court of a claim and afford it an opportunity to investigate and settle the claim. *Id.* Then the court stated that its construction also comported with the statute's history. The court quoted the original statute, which contained "sue and be sued" language. The original statute read as follows:

> All suits brought by or against any of the counties of this state, shall be brought in the name of or against the county of [naming the county], and by that name they may *sue and be sued, plead and be impleaded, defend and be defended,* in any court of record or other place where justice may be administered: Provided, however, that no county shall be sued, unless the claim upon which suit is founded shall have first been presented to the county court for allowance, and such court shall have neglected or refused to audit and allow the same.

*See id.* at 249–50 (quoting Act of May 11, 1846, 1st. Leg., Paschal's Digest, 1044, 1045 (amended 1879) (emphasis added)). The court noted that the Legislature amended the statute in 1879 by omitting all language before "no county shall be sued...." *See id.* at 250. The court then referred to *Missouri Pacific* when it stated, "Thus well over a hundred years ago, the Legislature deleted the only language *arguably* waiving sovereign immunity, suggesting that it intended to preserve counties' immunity from suit." *Id.* (emphasis added).

Later in the opinion, the *Pelzel* court discussed *Missouri Pacific* in some detail. The court summarized its 1970 holding in three sentences, which state:

In *Missouri Pacific,* we held that a statute applicable to navigation districts "is quite plain and gives general consent for District to be sued in the courts of Texas." The statute stated that navigation districts may, " 'by and through the navigation and canal commissioners, sue and be sued in all courts of this State in the name of such navigation district, and all courts of this State shall take judicial notice of the establishment of all districts.' " In response to the district's argument that other statutes had more clearly expressed consent to suit, we noted that "suits against counties have been held to be authorized by statutes that simply require the filing of a claim before institution of suit."

*Id.* at 251 (citations omitted). Distinguishing the statute in *Missouri Pacific* from the county presentment statute, the court stated, "But *Missouri Pacific* involved a different statute than the one in this case and *that statute, unlike the current version of the statute here,* contained 'sue and be sued' language." *Id.* (emphasis added). Then, the court noted it had found no cases to support the *Missouri Pacific* dicta that other statutes, such as "those that simply require the filing of a claim before institution of suit," expressed a less clear consent to suit than inclusion of "sue and be sued" language. *Id.* (referring to *Mo. Pac. R.R.,* 453 S.W.2d at 813).

Finally, the *Pelzel* court rejected the separate issue of whether the county had waived immunity from suit by its conduct, citing its opinion in *IT–Davy. Id.* at 251–52. Justice Enoch dissented on the grounds that the county waived its immunity by entering into the contract and stated that he would not have reached the presentment issue. *Id.* at 253 (Enoch, J., dissenting).

### 5. *Lawson*

The most recent supreme court opinion to cite *Missouri Pacific* in the immunity context was *Texas A & M University–Kingsville v. Lawson*, 87 S.W.3d 518 (Tex. 2002). The case involved the breach of a settlement agreement that Lawson and the university had entered following Lawson's suit over violation of the Whistleblower Act.[6] The Austin court of appeals had held that the State waived its immunity by accepting some of the benefits of a contract and then refusing to pay for those benefits. *See Lawson*, 28 S.W.3d 211, 214 (Tex.App.-Austin 2000), *aff'd*, 87 S.W.3d 518 (Tex. 2002). The supreme court affirmed. *Lawson*, 87 S.W.3d at 523.

In a plurality opinion, Justice Hecht cited *Missouri Pacific* two times: first, for the proposition that sovereign immunity encompasses the separate principles of immunity from liability and immunity from suit; and second, for the statement that, "For breach of contract claims, the Legislature has waived immunity in some instances but not all." *See id.* at 520 n. 15, 521 n. 21. The plurality's holding was that "when a governmental entity is exposed to suit because of a waiver of immunity, it cannot nullify that waiver by settling the claim with an agreement on which it cannot be sued." *Id.* at 521. Justice Enoch filed a concurring opinion, in which he maintained that the Legislature, by authorizing state agencies to enter into contracts, expressly waived their sovereign immunity. *Id.* at 523 (Enoch, J., concurring).

The dissent argued that a suit to enforce a settlement agreement is a separate breach-of-contract action. *See id.* at 524 (Rodriguez, J., dissenting) (citing *Mantas v. Fifth Court of Appeals*, 925 S.W.2d 656, 658–59 (Tex.1996)). As such, the dissent would have framed the issue in *Lawson* as "whether the State may assert sovereign immunity in an ordinary breach-of-contract case." *Lawson*, 87 S.W.3d at 524 (Rodriguez, J., dissenting). The dissent cited *Federal Sign*, *IT–Davy*, and *Pelzel* in support of its argument that the answer to that question was "decidedly 'yes.' "

### 6. The Law Crafted By the *Federal Sign* Progeny

The cases stemming from *Missouri Pacific* and *Federal Sign* have established a set of rules for waiver of immunity in the breach-of-contract context. First, the State waives its immunity from liability when it contracts with a private citizen. *See Fed. Sign*, 951 S.W.2d at 405. Second, the State does not waive its immunity from suit simply by entering into a contract. *See id.* at 408. Third, the State does not waive its immunity from suit when it accepts *some* of the benefits of a contract. *See Little–Tex*, 39 S.W.3d at 597. Fourth, it appears the State will not waive immunity from suit even when the private citizen has fully performed under the contract and the State has accepted the resulting benefits. However, it seems reasonable to assume that the State will not be allowed to "chisel" a contractor after full performance just because the State could "get away with it." *See IT–Davy*, 74 S.W.3d at 861 (Hecht, J., concurring). Finally, if the State enters into a settlement agreement stemming from a lawsuit where immunity from suit has been waived, the waiver will extend to the separate settlement agreement contract. *See Lawson*, 87 S.W.3d at 520.

Of course, in considering the cases in the *Federal Sign* progeny, it is important to recognize that all but *Pelzel* involved claims that the State has waived its immunity from suit by *implication*, i.e. the State's *conduct* resulted in a waiver of

---

**6.** *See* TEX. GOV'T CODE ANN. § 554.0035.

immunity. *Pelzel* held the county present-ment statute merely described "a condition precedent to suit." It did not waive immunity from suit. *Pelzel*, 77 S.W.3d at 249. The court reasoned that the "only language arguably waiving sovereign immunity," i.e., "sue and be sued" language, was deleted from the statute by the Legislature over 100 years ago. *Id.* at 250. Yet, as previously stated, the court steered carefully to avoid a declaration that "sue and be sued" language was insufficient to meet the requirement that language be clear and unambiguous to affect a waiver of immunity from suit in a contract context.

### MISSOURI PACIFIC AS IT RELATES TO THIS CASE

#### A. *Missouri Pacific* Stands As Controlling Law

Having analyzed the supreme court cases that have cited *Missouri Pacific*, I turn now to the majority's statements that would have the effect of squeezing any continued viability from the *Missouri Pacific* decision. The majority believes that the supreme court has "since departed from the logic of *Missouri Pacific* in the three decades following that decision." The clear meaning of this statement is that *Missouri Pacific* is not effective precedent. I disagree.

Far from "departing from the logic of the case in the three decades following that decision," the supreme court has cited *Missouri Pacific* eight times and has never once wavered from the soundness of its holding. Instead, the court continues to cite *Missouri Pacific* as an undiminished part of the tapestry of the rule of law on governmental immunity, especially as to waivers of governmental immunity from suit in contract cases. In short, *Missouri Pacific* has not been overruled, and it is the law. A court of appeals is bound by

the decisions of the Texas Supreme Court. *See, e.g., Lubbock County v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex.2002) ("It is not the function of a court of appeals to abrogate or modify established precedent. That function lies solely with [the Supreme] Court."); *Lofton v. Tex. Brine Corp.*, 777 S.W.2d 384, 386 (Tex.1989) (courts of appeals must follow the supreme court's pronouncements); *Swilley v. McCain*, 374 S.W.2d 871, 875 (Tex.1964) (same).

To illustrate its point that *Missouri Pacific* is no longer good authority, the majority cites several cases which reaffirm the supreme court's insistence that waiver of immunity from suit must be expressed by clear and unambiguous waiver. I agree with the legal proposition as to how a waiver must be expressed. Yet, that proposition does not form the basis for questioning the soundness of *Missouri Pacific*. After all, the supreme court stated in *Missouri Pacific* that the "sue and be sued" language was "*quite plain* and *gives general consent*" for the State to be sued. *Mo. Pac. R.R.*, 453 S.W.2d at 813 (emphasis added). The supreme court's use of the term "quite plain" in its description of the Legislature's waiver using the "sue and be sued" language certainly applies to virtually identical language in the case before us.

Next, the majority quotes *Pelzel* as providing support for its conclusion that the rationale behind *Missouri Pacific*, "which was based in part on an understanding that a presentment statute waived immunity from suit," has been called into question. However, *Pelzel* and its reference to *Missouri Pacific* should only be described as making a *distinction* between the statute in *Pelzel*, i.e., a presentment of claims statute *without* "sue and be sued" language, and that in the *Missouri Pacific* case, i.e., a statute delineating the powers of navigation district commissioners *with*

"sue and be sued" language. The supreme court only described the *Missouri Pacific* discussion of county statutes as "dicta." That discussion in *Pelzel* does not diminish the court's unequivocal decision that "sue and be sued" language in the navigation district statute constituted the necessary waiver. It is worthy of note that in *Pelzel,* it was the *absence* of "sue and be sued" language in the county presentment statute which actually gave support to the majority's conclusion that the Legislature had *not* waived immunity. *See Pelzel,* 77 S.W.3d at 251.

## 2. "Sue and Be Sued" Does Not Refer To the State's Capacity To Sue

In addition to my differences with the majority respecting the interpretation of *Missouri Pacific* and the *Federal Sign* progeny, I respectfully disagree relative to the meaning of the words "sue and be sued" as used in the relevant statutes. The majority holds that the meaning of "sue and be sued" language in statutes describes an entity's *capacity* to sue, rather than as a waiver of immunity. The majority finds the meaning of "sue and be sued" language in a law review discussion. *See* George C. Kraehe, *"There's Something About Cities": Understanding Proprietary Functions of Texas Municipalities and Governmental Immunity,* 32 TEX. TECH L.REV. 1, 35–36 (2000). The commentator argues that "sue and be sued" is nothing more than an acknowledgment by the Legislature that the entity described in a particular statute has a corporate-type legal existence, i.e., that in appropriate circumstances, the entity can be a party to

a suit, just as it could buy and sell real estate. *See id.*[7] Having adopted the commentator's views, the majority cites the recent decision of this Court in *City of Dallas v. Reata Construction Corp.,* 83 S.W.3d 392 (Tex.App.-Dallas 2002, pet. filed), as cause to determine that the "sue and be sued" language in the case before us is insufficient to waive immunity to suit.

In *Reata,* the city granted a license to a general contractor for the installation of a fiber optic cable conduit in downtown Dallas. The contractor subcontracted the drilling work to Reata Construction. During the drilling, Reata ruptured a water main, which resulted in substantial flooding of some downtown property. The property owner sued Reata, and Reata filed a third-party action against the city arguing that the city had been negligent by (1) improperly mapping or plotting the location of the water main when it was constructed in 1948, and (2) improperly identifying or marking the water main in response to Reata's request in 2000. The issue before this Court was whether the City's immunity had been waived so that Reata could proceed with its claims against the city. *Id.* at 394. Accordingly, the bulk of the opinion concerns waiver under the Tort Claims Act because Reata's claims against the city were all based in tort.

The portion of the *Reata* opinion relevant to the analysis in this case involved Reata's claims that the city had been negligent in 1948, before the 1970 passage of the Tort Claims Act. For its argument that the Legislature had expressly waived the city's immunity from suit, Reata pointed to

---

**7.** Although the commentator does acknowledge the holding of *Missouri Pacific,* he describes it as the first and only time the Texas Supreme Court has determined that "sue and be sued" language clearly and unambiguously waived immunity from suit. Because the article was published in 2000, the author was not able to include the reasoning from at least

four Texas Supreme Court cases issued since that time. As stated above, these cases clarify and enhance the effect of *Missouri Pacific* as the rule for statutory waiver from suit in breach-of-contract cases. *See Lawson,* 87 S.W.3d at 520–21; *Pelzel,* 77 S.W.3d at 248; *IT–Davy,* 74 S.W.3d at 854; *Little–Tex,* 39 S.W.3d at 594.

(1) section 51.075 of the local government code, which stated that the "[t]he municipality may plead and be impleaded in any court," and (2) the city's charter, which stated the city had the power "to sue and be sued" and "to implead and be impleaded in all courts." *See id.* at 398 (citing TEX. LOCAL GOV'T CODE ANN. § 51.075 (Vernon 1999); DALLAS CITY CHARTER ch. II, § 1(2), (3) (Aug.1999)). This Court concluded that the provisions at issue spoke to the city's capacity to sue when immunity *had* been waived, but the provisions themselves did not expressly waive immunity. *Reata,* 83 S.W.3d at 398.

I respectfully disagree with the majority's reliance on *Reata* in this case for several reasons. First, *Reata* is a tort case with an entirely separate body of law, which is distinct from that applicable to contract cases. The majority opinion addresses its view that this difference lacks importance when it states, "We are aware of no case that has made such a distinction." However, I believe the distinction between tort and contract as it relates to governmental immunity cannot be *overstated.* As described earlier, the supreme court *and* the Legislature have distinguished the requirements for waiver of immunity in a tort context from that in a contract context. Tort claim immunity extends to *both liability and suit.* However, in the contract context, the common law was altered to allow governmental entities to *waive immunity of liability by the State's own actions,* i.e., by the State entering into a contract. *See Lawson,* 87 S.W.3d at 520–21; *Pelzel,* 77 S.W.3d at 249; *Little Tex,* 39 S.W.3d at 594; *Fed. Sign,* 951 S.W.2d at 408. Moreover, sound policy supports distinguishing between tort

suits against the State and contract suits against the State. *See, e.g., Fed. Sign,* 951 S.W.2d at 417 (Enoch, J., dissenting) (modern justification for immunity, that suits against the State would deplete resources of treasury and tax funds necessary to operate the government, is not applicable in breach-of-contract context because the Legislature appropriates sufficient funds to meet the State's contractual obligations in advance); *see also Green Int'l, Inc. v. State,* 877 S.W.2d 428, 440 (Tex.App.-Austin 1994, writ dism'd) (Kidd, J., dissenting) ("In this modern age of sophisticated commerce, why should the State be accorded an unequal position under the law regarding mutual contractual obligations? There can be no doubt that if the State chose to sue Green on the contract, the State would face no impediment to suit.").

Second, and most importantly, in making its statement that "sue and be sued" language goes only to capacity to sue, *Reata* does not distinguish *Missouri Pacific's* holding that "sue and be sued" language plainly waives immunity from suit. *Reata* does not cite *Missouri Pacific.* However, *Reata* did cite *Jackson v. City of Galveston,* a 1992 opinion from the Houston Fourteenth Court of Appeals. 837 S.W.2d 868 (Tex.App.-Houston [14th Dist.] 1992, writ denied). Once again, *Jackson* was a tort case and is distinguishable from the case before us. Furthermore, in support of its statement that "sue and be sued" language did not impliedly [8] waive immunity from suit, the *Jackson* court cited *Townsend v. Memorial Medical Center,* 529 S.W.2d 264 (Tex.Civ.App.-Corpus Christi 1975, writ ref'd n.r.e.) and *Childs v. Greenville Hospital,* 479 S.W.2d 399 (Tex. Civ.App.-Texarkana 1972, writ ref'd n.r.e.).

---

**8.** Jackson's argument was that the doctrine of sovereign immunity was unconstitutional. In making that argument, he argued that "sue and be sued" language *impliedly* waived immunity from suit. Thus, it appears Jackson incorrectly conceded that "sue and be sued" was not an express waiver.

A reading of *Townsend* reveals that it relied exclusively on *Childs*. Further, it is clear that *Childs* not only involved immunity in the *tort* context, it relied exclusively on cases decided before *Missouri Pacific*. *See Townsend*, 529 S.W.2d at 267; *Childs*, 479 S.W.2d at 401. Accordingly, I would decline to follow *Reata's* reasoning and distinguish it to the extent it discussed the effect of "sue and be sued" language prior to the 1970 Tort Claims Act.

## C. The Fifth Circuit's Decision In *Webb v. City of Dallas*

A recent case written by the United States Fifth Circuit Court of Appeals is instructive in reaching my stance on this issue. In *Webb v. City of Dallas*, 314 F.3d 787 (5th Cir.2002), the city of Dallas claimed that a United States district court was without jurisdiction in a suit for damages and reverter brought against the city by the Webbs. At issue was whether the city was immune from suit under the Texas law regarding sovereign immunity. *See id.* at 792. The Webbs claimed that the basis for waiver of immunity from suit was the same government code and city charter provisions cited to us in the *Reata* case. *Id.* at 793 n. 21, n. 22 (citing Tex. Local Gov't Code Ann. § 51.075; Dallas City Charter ch. II, § 1(2), (3)). The city argued that those provisions, which contained "sue and be sued" language, did not expressly waive immunity from suit. Rather, the city claimed the provisions were "simply confirmations that the city of Dallas has the corporate capacity to sue and be sued." *Webb*, 314 F.3d at 793–94. Alternatively, the city asked the federal court to certify the express question of waiver of immunity on what it deemed an "unsettled" area of Texas law.

The Fifth Circuit refused to certify the question to the Texas Supreme Court because there was controlling authority from the supreme court that squarely addressed the issue in the case. *See id.* at 795–96. The *Webb* court researched Texas law and concluded, definitively, that *Missouri Pacific* was subsisting authority which holds that "sue and be sued" language constitutes an express legislative waiver of immunity. Importantly, the Fifth Circuit declined to follow *Reata*, *Jackson*, *Townsend*, and *Childs*, stating that "the Texas Supreme Court has addressed the question we are called upon to now answer, and the state appellate court decisions cited by the City do not persuade us to veer from this precedent." *Id.* at 795. Finally, with regard to the city's contention that "sue and be sued" language speaks only of capacity to sue, the Fifth Circuit stated that argument was "belied by the fact that the vast majority of state courts of appeals to address the express legislative waiver question in the context of similar 'sue and be sued' clauses follow *Missouri Pacific* as controlling Texas Supreme Court precedent." *Id.* I believe the Fifth Circuit correctly analyzed the state of Texas's law on governmental immunity, and its conclusion regarding the thirty-three-year-old decision in *Missouri Pacific* is sound.

## D. What the Legislature Means When It Uses "Sue and Be Sued" Language

Finally, any lingering doubt or concern about the effect that the phrase "sue and be sued" has on governmental immunity should have been assuaged when the Texas Legislature recently clearly identified the meaning it attributes to the language. On June 1, 2003, the Legislature passed Senate Bill 1017, "relating to the ability of a county to sue and be sued." *See* Tex. S.B. 1017, 78th Leg., R.S. (2003). Section two of the bill adds a new section 262.007 of the local government code, entitled "Suit Against County Arising Under Certain Contracts." *Id.* Governor Perry signed the bill on June 20, 2003, and the statute

took effect on September 1, 2003. While the new provisions of Senate Bill 1017 will have no bearing on the outcome of this particular case, I refer to the bill for the language it uses and the effect which the Legislature must have intended to reside in such language.

The unmistakable clarity of the Legislature's motivations is set out in the statement of "Background and Purpose" in both the House and Senate committee reports. *See* BILL ANALYSIS, Tex. S.B. 1017, 78th Leg., R.S. (2003). Identical language in each report states, "In May 2002, the Texas Supreme Court held that Section 89.004, Local Government Code, does not clearly and unambiguously waive immunity from suit for claims against counties." *Id.* The supreme court's decision that prompted the resulting legislative action is unquestionably *Pelzel.* That decision was decided on May 9, 2002 and clearly addressed the absence of "sue and be sued" language in section 89.004 of the local government code as the basis for concluding that the Legislature had not waived immunity from suit in contract claims described in the statute. *See Pelzel,* 77 S.W.3d at 251.

Senate Bill 1017 amends section 89.004, and then adds section 262.007. Section (a) of the 262.007 provides that a county that is a party to a contract for certain enumerated goods or services "may *sue or be sued, plead or be impleaded,* or *defend or be defended* on a claim arising under the contract." *Id.* (emphasis added). Subsection (a) also requires that a suit on the contract be brought in the name of the county and shall be brought in a state court in that county. *Id.* Later, subsection (d) of the new statute states *"This section does not waive a defense* or a limitation on damages available to a party to a contract, *other than a bar against suit based on*

*sovereign immunity." Id.* (emphasis added). Clearly, subsection (d) would have no effect if the Legislature's use of the phrase "sue or be sued, plead or be impleaded, or defend or be defended" was not a statutory waiver of immunity from suit for breach of contract. It is clear that the Legislature is cognizant that waiver of immunity must be by "clear and unambiguous language." [9] It is likewise clear that "sue and be sued" *is* clear and unambiguous language.

## CONCLUSION

The Legislature expressly waives immunity from suit respecting a contract claim when it uses "sue and be sued" language in a statute. The supreme court came to the same conclusion in *Missouri Pacific Railroad Co. v. Brownsville Navigation District.* The majority's opinion in this case treats *Missouri Pacific* as if overruled without authority to do so. There is no question that the supreme court has had the opportunity to overrule *Missouri Pacific.* It has not taken that step. I respectfully suggest that this Court should not proceed where the supreme court has not directed. I would reverse the trial court's granting of The District's plea to the jurisdiction. Therefore, I respectfully dissent.

---

9. *See* BILL ANALYSIS, Tex. S.B.2017, 78th Leg., R.S. (2003).