NORTH AMERICAN SHIPBUILDING, INC., Appellant,

v.

SOUTHERN MARINE & AVIATION UNDERWRITING, INC., et al., Appellees.

No. 01–95–00471–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 29, 1996.

---

Sara J. Fendia, Kenneth Fibich, Michael Zomcik, Houston, for appellant.

Michael McCoy, P.W. Pickering, Gray H. Miller, Steven Pate, William Boyce, Houston, for appellees.

Before HEDGES, TAFT and COHEN, JJ.

## OPINION

COHEN, Justice.

North American Shipbuilding, Inc. appeals a take-nothing summary judgment arising from an insurance coverage dispute. We affirm.

## FACTS

Viewed in the light most favorable to the non-movant, the evidence shows the following. In February 1990, North American contracted to build a ship designated NASB Hull # 137 and purchased a builder's risk insurance policy to insure Hull # 137 during construction.

Through its agent, Mr. Fred Schall of the insurance brokerage firm of Adams & Porter, North American purchased the policy through Mr. Andrew Fossler of appellee Southern Marine. As a wholesale broker, Southern Marine places insurance with various underwriters pursuant to instructions of retail insurance brokers. The policy was insured by appellee, David Coleridge, as agent of certain underwriters at Lloyd's, London ("Underwriters").

The policy was issued on the February 8, 1979, version of the American Institute Builder's Risks Clauses form. It

insures against **all risks of physical loss of or damage to the Vessel** occurring during the currency of this Policy, except as hereinafter provided.

In the event that faulty design of any part or parts should cause physical loss of or damage to the Vessel, this insurance shall not cover the cost of expense or repairing, replacing or renewing such part or parts, nor any expenditure incurred by reason of betterment or alteration in design.

(Emphasis added.)

In August 1990, North American tested welds on Hull # 137. Certain welds failed the tests. The cause was improperly mixed welding gas that North American had received from Swisco, Inc. North American then determined the location of all welds prepared with Swisco gas and tested those by ultrasonic testing, x-ray, and gouging. North American then repaired the damaged welds. This process occurred over an eight-to-ten month period.

In August 1992, North American demanded $1,056,795.50 from the Underwriters. In September, the Underwriters wrote that

[i]n addition to the reservation of rights expressed in a letter from Mrs. P.A. Jamison of Southern Marine & Aviation Underwriters, Inc. to Mr. Dean Smith of Adams & Porter dated November 19, 1991, please be advised that underwriters are denying coverage under the terms, conditions and limits of the policy based upon the holding of the United State Court of Appeals for the Fifth Circuit in *Trinity Industries, Inc. v. Insurance Company of North America*, 916 F.2d 267 (5th Cir.1990).

North American sued the Underwriters alleging claims for (1) breach of the insurance contract, (2) breach of the common law duty of good faith and fair dealing, (3) fraud, (4) violations of article 21.21 of the Texas Insurance Code, and (5) punitive damages. Underwriters moved for summary judgment on the following grounds:

1. The claim for faulty initial construction does not constitute "physical loss of or damage to" the vessel under a builder's risk policy and therefore is not covered.

2. North American's claim is barred due to late notice.

3. North American has no claim for common law bad faith, violation of article 21.21 of the Insurance Code, or punitive damages because the claim is not covered and Underwriters had a reasonable basis for denying coverage.

4. North American cannot obtain punitive damages.

5. North American cannot maintain fraud or misrepresentation claims based upon its

own unilateral misunderstanding of the policy language.

North American sued Southern Marine alleging claims for (1) breach of the common law duty of good faith and fair dealing, (2) fraud/intentional misrepresentation, (3) negligent misrepresentation, (4) common law negligence, (5) violations of article 21.21 of the Texas Insurance Code, and (6) punitive damages. Southern Marine moved for summary judgment on the following grounds:

1. Southern Marine is a wholesale insurance broker, not an insurance carrier, and thus owes no duty of good faith and fair dealing to North American, the insured party under the policy at issue.

2. Southern Marine did not misrepresent the scope of coverage provided by the insurance policy at issue; the specific basis for the Underwriters' exclusion of the claim was never discussed. Therefore, Southern Marine cannot be found to have made misrepresentations actionable at common law or under the Texas Insurance Code.

3. As a matter of law, North American has no claim for misrepresentation or fraud against Southern Marine based on the promise of Underwriters to provide a policy providing all-risks coverage for physical loss or damage to a hull being constructed by North American, because the policy that was issued clearly provides such coverage. North American cannot maintain a fraud or misrepresentation claim against a wholesale insurance broker such as Southern Marine based on Plaintiff's unilateral misconception about the meaning of the policy.

The trial judge granted summary judgments for Underwriters and for Southern Marine on all claims without specifying the grounds.

### Liability of Underwriters

■ In its first point of error, North American contends the trial judge erred in granting summary judgment in favor of the Underwriters. When, as here, the judgment does not state the grounds on which it was granted, we will affirm if any theory advanced in the motion is meritorious. *State Farm Fire & Casualty Co. v. S.S.*, 858 S.W.2d 374, 378 (Tex.1993).

■ Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c); *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1994). In reviewing a summary judgment, we accept as true evidence in favor of the non-movant, indulging every reasonable inference and resolving all doubts in its favor. *Id.*

### Breach of Insurance Contract

■ Underwriters contends there is no contract breach because the policy language "physical loss of or damage to the vessel" does not provide coverage for replacing the defective welds. We agree.

In *Trinity Indus., Inc. v. Insurance Co. of N. Am.*, 916 F.2d 267 (5th Cir.1990), the insured, a shipbuilder covered by a builder's risk policy, built a vessel with a twisted hull. *Id.* at 267–68. After paying $200,000 to the vessel owner to satisfy an arbitration award based on violation of the warranty of workmanlike performance, the builder sued its insurer to recover that sum. *Id.* at 268. The trial judge granted the builder's motion for summary judgment, holding that the arbitration award was covered by the policy. *Id.* at 268–69. The policy language was from the December 1, 1959, version of the American Institute Builder's Risk Form, which insured

against all risks of physical loss of or damage to the subject matter here insured....

*Id.* at 269.

The Fifth Circuit declared:

We have trouble with the notion that a Builder's Risk policy covers the cost incurred by the policyholder to correct faulty workmanship. While we recognize that courts, including ourselves, have used

broad language in describing the extent of coverage provided by an all risks policy, we are convinced that neither party intended for the Builder's Risk policy to cover the cost of repairing plaintiff's mistakes in construction.

*We are mindful of the many cases that have found defective workmanship to be a risk covered by all risk policies. These cases, however, have dealt with an accident caused by defective workmanship, not with the cost of replacing or repairing defective workmanship. Dow Chemical Company v. Royal Indemnity Company,* [635 F.2d 379 (5th Cir.1981) ] is a representative example. In that case R.B. Butler, Inc. had contracted with the City of El Paso to build four 221–foot thin-shell concrete domes. As a first step in constructing the concrete domes, Dow Chemical, a subcontractor, built a styrofoam dome to be used as a form. After Dow had finished the styrofoam form, concrete was sprayed over the outside of the styrofoam, with the expectation that it would harden. Because Dow improperly constructed the styrofoam form, the dome collapsed before the cement could harden. The Fifth Circuit held that Butler's Builder's Risk policy covered the collapse.

But the facts in *Dow Chemical Co.* and the case before us differ in that in *Dow Chemical Co.* the faulty workmanship led to an accident, the collapse of the dome. In this case, the faulty workmanship, the twist, has not led to any accident. *In fact, in all of the cases cited by plaintiff, and that we have found, on this issue, faulty workmanship or design led to a discrete event that a reasonable person would call an accident.* And, in each case, the court faced the question of whether an all risks policy covered the damage from the resulting accident.

While the distinction is perhaps difficult to see as an abstract concept, it appears relatively clear as a practical matter. Many construction accidents can be traced, at least in part, to some negligence on behalf of the insured. Defective workmanship can lead to the collapse of a cement dome or a brick wall. If an all risks policy did not cover accidents resulting from such negligence, then perhaps it would become a no risk policy, as one plaintiff has suggested.

That it should cover accidents caused by the negligence of the insured does not justify reading such a policy to cover the cost of replacing or repairing crooked window frames or crooked door frames, even though the crookedness of the frame was undoubtedly the result of the insured's negligence.

*The language "physical loss or damage" strongly implies that there was an initial satisfactory state that was changed by some external event into an unsatisfactory state—for example, the car was undamaged before the collision dented the bumper. It would not ordinarily be thought to encompass faulty initial construction.*

*Thus, when an insured has made claims for the collapse of the insured subject matter because of faulty design, district courts have awarded as damages the cost to rebuild the structure in its defective state. They have not awarded as damages the cost to redesign or rebuild the structure so as to eliminate the defect. This reflects an interpretation of all risks policy to cover accidents resulting from defective design or workmanship, but not the cost of repairing the defect itself.*

· · · · ·

We hold that the parties, by their language "physical loss or damage", did not intend to cover the cost of repairing faulty initial construction.

916 F.2d at 269–72. (footnotes omitted) (emphasis supplied).

■ We find the present case to be indistinguishable from *Trinity.* The relevant coverage language—"physical loss of or damage to the vessel"—is the same. Both cases deal with the losses due to defective workmanship, and neither deals with an accident caused by the defective workmanship. Nei-

ther the welds North American replaced nor the twisted hull in *Trinity* were ever in "an initial satisfactory state that was changed by some external event into an unsatisfactory state." 916 F.2d at 270–71. Like the *Trinity* court, we hold that the language "physical loss of or damage to the vessel" does not cover the cost of repairing faulty initial construction.

North American attempts to distinguish *Trinity*. First, it contends *Trinity* was decided using Louisiana contract interpretation principles that differ from Texas principles. We disagree. The *Trinity* standards are also followed in Texas. 916 F.2d at 269 (Intentions of the parties, as determined by policy language, determine extent of coverage; words are given their plain meaning, courts consider the policy as a whole and interpret it to fulfill reasonable expectations of the parties in light of customs and usages of the industry; court should not change coverage under the guise of interpreting ambiguous language, but ambiguous clauses are construed against the insurer). *See National Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex.1991); *Puckett v. United States Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex.1984); *Republic Nat'l Life Ins. Co. v. Spillars*, 368 S.W.2d 92, 94 (Tex.1963).

Second, North American contends that unlike the insured in *Trinity*, its claim is not based on contractual liability, but on damages caused by a third party supplier, Swisco. We disagree that this calls for a different result. The court in *Trinity* based its decision on two independent grounds. The first was that the language "physical loss of or damage to the vessel" did not cover the cost of repairing faulty initial construction, but was limited to "a discrete event that a reasonable person would call an accident." 916 F.2d at 270. The second was that the parties did not intend to cover "contractual risks," and an adverse arbitration award was a contractual risk that did not qualify as "physical loss or damage to the vessel." 916 F.2d at 271. Since *Trinity* was not decided

on this second ground alone, the fact that North American's claim against Swisco was not based on contractual liability [1] is immaterial; the first ground is sufficient to support our decision.

Third, North American contends that unlike *Trinity*, it suffered losses as a result of the necessary and immediate repairs to the vessel. The policy requires that the vessel suffer the "physical loss or damage." Here, the welds were never "in an initial satisfactory state that was changed by some external event into an unsatisfactory state," but instead came into existence in a damaged state. 916 F.2d at 270–71. Consequently, the vessel did not suffer physical loss or damage as the policy uses those terms.

Fourth, North American contends that the insured in *Trinity* lost because it was at fault for the faulty construction. North American contends it should win because it was not at fault, Swisco was. This misinterprets *Trinity's* holding. The Fifth Circuit stated that an accident caused by the insured's own negligence would be covered. 916 F.2d at 270 ("If an all risks policy did not cover accidents resulting from such negligence [i.e. the insured's negligence] then perhaps it would become a no risk policy, as one plaintiff has suggested," and the policy "should cover accidents caused by the negligence of the insured. . . ."). Thus, the important point in *Trinity* was not who was at fault, the insured or a third party, but whether the damage was "accidental" or due to faulty initial construction. The *Trinity* court used the word "accident" nine times to describe the type of "discrete event" that would result in a "fortuitous" loss that would be covered. 916 F.2d at 269, n. 11, 270–71. Moreover, under North American's interpretation, a builder's risk policy effectively would guarantee the quality of every component used in a vessel's construction, as long as the builder was not at fault in the way it used the component. This interpretation transforms a builder's risk policy into a performance bond. We do not believe the Fifth Circuit in *Trinity*, nor the parties here, intended such a result.

1. North American characterizes its claim against    Swisco as a tort.

North American argues that the policy covers all risks except those specifically excluded, and because the policy's sole exclusion concerns damages resulting from "faulty design," then damages due to faulty initial construction are not excluded. However, *Trinity* makes clear that these types of damages need not be "excluded" from an all risks policy because they are not covered to begin with.

■ Finally, North American contends it raised material fact issues regarding (1) whether physical loss or damage to the vessel was sustained, and (2) the intent of the parties to the contract. Regarding the first contention, there is no factual dispute that the defective welds required repair. The only disputed issue is whether such repairs are covered by the policy, a legal issue. Regarding the second contention, the policy's coverage is determined by its language, not by the parties' intent. *Spillars,* 368 S.W.2d at 94.

Because the Underwriters proved they did not breach the contract, the trial judge properly granted summary judgment on that cause of action. Due to our disposition of this point, we need not address the adequacy of North American's notice of claim.

### Breach of the Duty of Good Faith and Fair Dealing

■ Next, the Underwriters assert that, as a matter of law, they had a reasonable basis for denying the claim. We agree. "As a general rule there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered." *Republic Ins. Co. v. Stoker,* 903 S.W.2d 338, 341 (Tex. 1995). Moreover, even if *Trinity* did not preclude coverage of North American's claim, its close similarity to this case constitutes a reasonable basis for the Underwriters to have denied coverage.

The trial judge properly granted summary judgment on North American's claim for breach of the duty of good faith and fair dealing.

### Other Claims

North American does not challenge the summary judgment on its claims for (1) fraud/intentional misrepresentation; (2) violations of article 21.21 of the Texas Insurance Code; or (3) punitive damages. Consequently, there is nothing to review on these claims.

We overrule the first point of error.

### Southern Marine

■ North American contends the trial judge erred in granting summary judgment in favor of Southern Marine. We will affirm if any ground in Southern Marine's motion is meritorious. *S.S.,* 858 S.W.2d at 378.

In its second amended petition, North American asserted claims of fraud, negligence, and Insurance Code violations, specifically that:

> Southern Marine represented to North American that the builder's risk policy Southern Marine provided would insure against "all risks" of loss or damage, including the loss occasioned by the defective welding gas, and it did not do so.

> Or alternatively, Southern Marine failed to inform North American that a loss like that incurred as a result of the defective welding gas was not covered.

Southern Marine argues it conclusively proved that it never stated the policy would cover a loss like this one. It is undisputed that the policy "insures against **all risks of physical loss of or damage** . . . ." (Emphasis added.) Thus, to the extent that Southern Marine represented that it would secure a builder's risk policy to insure against "all risks" of loss or damage, no misrepresentation was made, as a matter of law. In addition, undisputed evidence proved that Southern Marine did not represent to North American or its agent, Fred Schall, that the policy would cover faulty workmanship. Nor has North American raised a fact issue with respect to whether such a representation was

ever made.[2] Consequently, as a matter of law, Southern Marine did not make actionable misrepresentations.

The remaining issue is whether Southern Marine's failure to inform North American that faulty workmanship was not covered is actionable. As a matter of law, it is not. Southern Marine was not North American's agent; it was the Underwriters' agent. When the agent (Mr. Schall) of an applicant (North American) agrees to apply for insurance on behalf of the principal (North American), the agent (Mr. Schall) has the duty to inform the principal (North American) what coverages are included. *McNeill v. McDavid Ins. Agency*, 594 S.W.2d 198, 202–03 (Tex.Civ.App.—Fort Worth 1980, no writ). An agent (Southern Marine) of the insurer (the Underwriters) does not have a duty to the applicant (North American) to explain the terms of and coverages included in the application. *Id.; see also Riggs v. Sentry Ins.*, 821 S.W.2d 701, 705 (Tex.App.—Houston [14th Dist.] 1991, writ denied); *Cf. Duhon v. Mobil Oil Corp.*, 12 F.3d 55 (5th Cir.1994).

North American's claims for fraud/intentional misrepresentation, negligent misrepresentation, negligence, and article 21.21 violations are defeated as a matter of law. The trial judge properly granted summary judgment on these causes of action.

### Other Claims

North American does not challenge Southern Marine's summary judgment on the claims for breach of the duty of good faith and fair dealing and punitive damages. Consequently, there is nothing to review on these claims.

We overrule the second point of error.

The judgment is affirmed.

---

**2.** North American's agent, Mr. Schall, testified by affidavit that claims for weld damage caused by improperly mixed welding gas were not discussed during his negotiations with Southern Marine. Moreover, Mr. Schall testified by deposition that he had no discussions with Mr. Fossler about including or excluding coverage for faulty workmanship.