**TOMBALL HOSPITAL AUTHORITY, Appellant,**

v.

**HARRIS COUNTY HOSPITAL DISTRICT, Appellee.**

**No. 14–04–00263–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

July 28, 2005.

Rehearing Overruled Oct. 6, 2005.

Margaret A. Pollard, Randall L. Payne, Houston, for appellant.

Sandra D. Hachem, Houston, for appellee.

Panel consists of Justices ANDERSON, HUDSON, and FROST.

## OPINION

J. HARVEY HUDSON, Justice.

This appeal arises out of a dispute over who should bear the responsibility of paying for indigent healthcare. Appellant, Tomball Hospital Authority ("Tomball"), provided over $480,000 of medical services to indigent patients who were eligible for free or reduced-cost healthcare under the Indigent Health Care and Treatment Act.[1] When Tomball sought reimbursement from the Harris County Hospital District ("Harris County"), Harris County refused to pay, and Tomball filed suit. Harris County then filed a plea to the jurisdiction and a motion for summary judgment. The trial court granted Harris County's plea to the jurisdiction without ruling on its motion for summary judgment and dismissed the case for want of jurisdiction. On appeal, Tomball contends the trial court improperly granted Harris County's plea and erred in dismissing the case. We reverse and remand.

## Factual and Procedural Background

The record reflects that between May 2001 and August 2003, Tomball accepted and provided medical treatment to numerous patients who were believed to be eligible for free or reduced-cost healthcare in Harris County under Chapter 61 of the Texas Health and Safety Code, otherwise known as the Indigent Health Care and Treatment Act. *See generally* TEX. HEALTH & SAFETY CODE ANN. §§ 61.001–61.066 (providing the statutory scheme for healthcare treatment of indigent patients). Despite being valid "Gold Card Holders,"[2] some of these patients were turned away by Harris County facilities and forced to seek treatment at Tomball Regional Hospital ("TRH"), Tomball's primary medical treatment facility.[3] Other patients were diverted to TRH for unspecified reasons. Often requests were made, by either the patient or Tomball, for transfers to Harris County facilities. But in most instances Harris County denied these requests. Still, other patients were treated and released by TRH—at Tomball's expense—without recognition from Harris County that treatment was provided.

---

1. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 61.001–61.066 (Vernon 2001 & Supp. 2004–05).

2. "Gold Card Holder" is the term used in the healthcare industry to describe an individual who resides in Harris County and who, based on financial condition, has applied for and been determined eligible to receive a "Gold Card," thus entitling the person to free or reduced-cost healthcare pursuant to the Health & Safety Code and Harris County's eligibility requirements.

3. For example, one patient attempted to go to Harris County's LBJ Hospital, but was denied admittance because the facility was on "drive by status." Another patient was in an ambulance and asked to be taken to Ben Taub Hospital but emergency medical service personnel refused and, instead, transported her to TRH.

After providing the patients' necessary healthcare, Tomball sent numerous written notices and demands for reimbursement of the treatment costs. However, Harris County refused to pay for treatment of any patients treated at TRH despite recognizing its obligation to provide treatment *had the patients been admitted to a Harris County facility.*[4] Harris County averred "not all provisions of the [Indigent Health Care and Treatment Act] apply to the District" and further stated that it was "exempt from requirements under the [Act] concerning payment to other facilities in other counties."

In light of Harris County's refusals, Tomball filed suit alleging violations of both the Texas Constitution and the Health & Safety Code. Specifically, Tomball claimed Article IX, Section 4 of the constitution and section 281.046 of the Health & Safety Code required Harris County to assume "full responsibility" for furnishing and providing medical and hospital care for all indigent residents within Harris County.[5] Moreover, Tomball claimed sections 61.045, 61.060, and 281.056 of the Health and Safety Code waived Harris County's immunity and made it liable for costs of the treatment provided.[6] Subsequently, Harris County

filed a plea to the jurisdiction arguing: (1) the court lacked jurisdiction under the doctrine of governmental immunity; (2) the Health & Safety Code provided the county courts with exclusive jurisdiction over the dispute; and, alternatively, (3) the Texas Department of Health was vested with exclusive, original jurisdiction to entertain the matter. Harris County also filed a motion for summary judgment on grounds that governmental immunity precluded Tomball from bringing suit. After considering the pleadings and evidence, the trial court granted Harris County's plea to the jurisdiction but did not rule on the motion for summary judgment.

## Scope of Review

 Appellate courts have jurisdiction over appeals from interlocutory orders only if expressly provided by statute. *Stary v. DeBord,* 967 S.W.2d 352, 352–53 (Tex.1998) (per curiam). Section 51.014(a)(8) of the Texas Civil Practice and Remedies Code provides for an interlocutory appeal from an order granting or denying a plea to the jurisdiction by a governmental unit. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (Vernon Supp. 2004–2005).[7] Therefore, because the trial

4. Harris County took the position in correspondence leading to this suit that it was obligated to care for only those Gold Card Holders who were actually patients "in its facilities."

5. *See* TEX. CONST. art. IX, § 4 ("The Legislature may by law authorize creation of countywide Hospital Districts . . . [that] shall assume *full responsibility* for providing medical and hospital care to needy inhabitants of the county.") (emphasis added); TEX. HEALTH & SAFETY CODE ANN. § 281.046 (Vernon 2001) ("[T]he district assumes *full responsibility* for furnishing medical and hospital care for indigent and needy persons residing in the district.") (emphasis added).

6. *See* TEX. HEALTH & SAFETY CODE ANN. § 61.045 (explaining that a hospital district "shall pay"

for services rendered by another healthcare provider); *id.* § 61.060 ("A hospital district *is liable* for health care services as provided by the Texas Constitution and the statute creating the district.") (emphasis added); *id.* § 281.056 (Vernon Supp.2004–05) (stating that a hospital district's board of managers may "sue and be sued").

7. Section 51.014(a)(8) provides, in relevant part, "[a] person may appeal from an interlocutory order of a district court that grants or denies a plea to the jurisdiction by a governmental unit as that term is defined in Section 101.001." TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8). Governmental unit is defined by section 101.001 to include all state agencies, political subdivisions, and "any other institution, agency, or organ of government

court's grant of Harris County's plea to the jurisdiction was interlocutory, our jurisdiction over this dispute is limited. *Tex. Mun. Power Agency v. Pub. Util. Comm'n,* 100 S.W.3d 510, 514–15 (Tex.App.-Austin 2003, pet. denied); *see also Tex. Dep't of Transp. v. City of Sunset Valley,* 8 S.W.3d 727, 730–31 & n. 3 (Tex.App.-Austin 1999, no pet.) (holding in an appeal involving a plea to the jurisdiction under 51.014(a)(8), "[o]ur analysis is, of necessity, confined only to [the parties'] jurisdictional arguments").

█ In reviewing a plea to the jurisdiction, we cannot examine the merits of the case or the issues raised in a motion for summary judgment. *See Cozby v. City of Waco,* 110 S.W.3d 32, 35–36 (Tex.App.-Waco 2002, no pet.) (dismissing summary judgment points of error for want of jurisdiction and addressing only the plea to the jurisdiction); *see also County of Cameron v. Brown,* 80 S.W.3d 549, 555 (Tex.2002) ("In deciding a plea to the jurisdiction, a court may not weigh the claims' merits but must consider only the plaintiffs' pleadings and evidence pertinent to the jurisdictional inquiry."); *City of Houston v. Rushing,* 7 S.W.3d 909, 913 (Tex.App.-Houston [1st Dist.] 1999, pet. denied) (explaining that "[a] motion for summary judgment concerns the merits of a lawsuit" whereas "a plea to the jurisdiction concerns whether the pleadings state a cause of action that confers jurisdiction on the trial court"); *City of Sunset Valley,* 8 S.W.3d at 730–31 & n. 3. Therefore, we cannot address the issues raised by Harris County's summary judgment motion, but instead, must limit our decision solely to the three jurisdictional issues raised by Harris County's plea. *Cozby,* 110 S.W.3d at 35–36; *City of Sunset Valley,* 8 S.W.3d at 730–31 & n. 3; *Rushing,* 7 S.W.3d at 913.

## Plea to the Jurisdiction

*Governmental Immunity* [8]

█ Harris County first argued in its plea to the jurisdiction that the trial court lacked subject matter jurisdiction according to the doctrine of governmental immunity. Subject matter jurisdiction is essential to a court's power to decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 443 (Tex.1993). The plaintiff bears the initial burden to allege facts that affirmatively demonstrate the trial court has subject matter jurisdiction over the suit. *Id.* at 446. A defendant may challenge a court's subject matter jurisdiction by filing a plea to the jurisdiction. *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex.2000). If

the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution." Tex. Civ. Prac. & Rem.Code Ann. § 101.001(3) (Vernon 2005). Thus, there is little doubt that Harris County is a governmental unit. *See Seamans v. Harris County Hosp. Dist.,* 934 S.W.2d 393, 395 (Tex.App.-Houston [14th Dist.] 1996, no writ) (describing Harris County Hospital District as a "state agency"); *Weeks v. Harris County Hosp. Dist.,* 785 S.W.2d 169, 170 (Tex.App.-Houston [14th Dist.] 1990, writ denied) ("Harris County Hospital District is a political subdivision of the State of Texas.").

8. The terms "sovereign immunity" and "governmental immunity" are often used interchangeably. However, there is a distinction.

Sovereign immunity refers to the State's immunity from suit and liability, and it protects the State and its various divisions and agencies. *Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 694 n. 3 (Tex.2003). In contrast, governmental immunity protects political subdivisions of the State, including counties, cities, and school districts. *Id.* Because Harris County Hospital District is a political subdivision, we will use the term governmental immunity in this opinion. *See Weeks,* 785 S.W.2d at 170 ("Harris County Hospital District is a political subdivision of the State of Texas and is entitled to invoke the doctrine of governmental immunity."); *Seamans,* 934 S.W.2d at 395 ("Harris County Hospital District share[s] this governmental immunity.").

the defendant is a governmental entity, it may file a plea on the basis of governmental immunity.[9] *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 853–55 (Tex.2002); *Bland Indep. Sch. Dist.*, 34 S.W.3d at 554; *Tarrant County Hosp. Dist. v. Henry*, 52 S.W.3d 434, 440 (Tex.App.-Fort Worth 2001, no pet.). A plaintiff who wishes to sue the State must establish a waiver of immunity by pleading it with reference to a statute or other express legislative decree. *IT–Davy*, 74 S.W.3d at 855; *Gen. Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 594 (Tex.2001). Only the legislature can waive immunity from suit, and it must do so by "clear and unambiguous" language in a constitutional or statutory provision. *IT–Davy*, 74 S.W.3d at 853–54; *Henry*, 52 S.W.3d at 440; *see also* TEX. GOV'T CODE ANN. § 311.034 (Vernon 2005) ("[A] statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by *clear and unambiguous* language.") (emphasis added).

▮▮▮ When deciding a plea to the jurisdiction, the trial court considers the allegations in the plaintiff's petition and accepts those allegations as true without considering the merits of the case. *Harris County v. Proler*, 29 S.W.3d 646, 647 (Tex.App.-Houston [14th Dist.] 2000, no pet.). The trial court may also consider evidence especially relevant to the jurisdictional issues raised. *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555; *City of Galveston v. Gray*, 93 S.W.3d 587, 590 (Tex.App.-Houston [14th Dist.] 2002, pet. denied). On appeal, we review a trial court's order on a jurisdictional plea based on governmental immunity under a *de novo* standard. *IT–Davy*, 74 S.W.3d at 855. Furthermore, we construe the pleadings in the plaintiff's favor and look to the pleader's intent. *Brown*, 80 S.W.3d at 555; *Brenham Hous. Auth. v. Davies*, 158 S.W.3d 53, 56 (Tex. App.-Houston [14th Dist.] 2005, no pet.).

Turning to the pleadings in this case, Tomball relied on a number of statutory provisions to support its claim that Harris County's immunity from suit had been waived. Most significantly, Tomball cited section 281.056(a) of the Health and Safety Code. In general, chapter 281 of the Code

---

**9.** The doctrine of governmental immunity encompasses two principles: (1) immunity from suit; and (2) immunity from liability. *Taylor*, 106 S.W.3d at 695–96; *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 853–55 (Tex.2002); *Tarrant County Hosp. Dist. v. Henry*, 52 S.W.3d 434, 440 (Tex.App.-Fort Worth 2001, no pet.). Immunity from suit prohibits suits against the State unless the State has expressly consented to be sued. *Taylor*, 106 S.W.3d at 696; *IT–Davy*, 74 S.W.3d at 853–54; *Henry*, 52 S.W.3d at 440. "Because immunity from suit defeats a trial court's subject matter jurisdiction, it is properly asserted in a plea to the jurisdiction." *Henry*, 52 S.W.3d at 440 & n. 10 (citing *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638–39 (Tex.1999)); *accord IT–Davy*, 74 S.W.3d at 853–55; *Bland Indep. Sch. Dist.*, 34 S.W.3d at 554. On the other hand, "immunity from liability protects the State from money judgments even if the Legislature has expressly given consent to sue." *IT–Davy*, 74 S.W.3d at 853. Unlike immunity from suit, "immunity from liability is an affirmative defense and does not affect a court's jurisdiction to hear a case." *Henry* at 440; *see also Taylor*, 106 S.W.3d at 696 (explaining that immunity from liability cannot be raised in a plea to the jurisdiction).

Accordingly, we again note our analysis is limited to the jurisdictional issues involving Harris County's immunity from suit, not the merits of its affirmative defense of immunity from liability. Particularly because the trial court declined to rule on Harris County's motion for summary judgment, that issue is not properly before this court. *See generally City of Sunset Valley*, 8 S.W.3d at 731 ("We decline to permit [the State] to use this interlocutory appeal as a vehicle to circumvent the bounds set by statute in order to obtain judicial review of the merits of [the] case before the district court has entered a final judgment.").

enables the creation of county hospital districts like Harris County and governs the duties and obligations of the districts once they are established. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 281.001–.123 (Vernon 2001 & Supp.2004–05). The chapter requires a board of hospital managers to be appointed who are to oversee the operations of each district. *Id.* § 281.021. Under the subchapter entitled "General Powers and Duties," the legislature included section 281.056(a) which specifically states "[t]he board may *sue and be sued.*" *Id.* § 281.056(a) (emphasis added). This is exactly the kind of clear, unambiguous language courts recognize as a waiver of immunity from suit.

For example, in *Missouri Pacific R.R. Co. v. Brownsville Navigation District,* the Texas Supreme Court held that a statute permitting a navigation district to "sue and be sued" was a "general consent for [the] District to be sued in the courts of Texas in the same manner as other defendants." 453 S.W.2d 812, 813 (Tex.1970). The court further explained that the "District is a *political subdivision that is always subject to suit* by virtue of a general statute, . . ." *Id.* at 814 (emphasis added). Accordingly, the court held it was error for the lower courts to grant the district's plea to the jurisdiction based on immunity from suit. *Id.*

The majority of appellate courts have relied on *Missouri Pacific* to conclude "sue and be sued" and similar language clearly expresses the legislature's intent to waive a governmental entity's immunity from suit.[10] Other appellate courts have

---

**10.** *See EPGT Tex. Pipeline, L.P. v. Harris County Flood Control Dist.,* 176 S.W.3d 330, 339 (Tex.App.-Houston [1st Dist.] 2004, pet. dism'd) (holding "sue and be sued" language in Water Code waives flood control district's immunity from suit); *Metro. Transit Auth. v. MEB Eng'g, Inc.,* 176 S.W.3d 300, 304 (Tex. App.-Houston [1st Dist.] 2004, pet. filed) (holding Transportation Code section providing that transit authority may "sue and be sued" waives governmental immunity from suit under *Missouri Pacific* ); *City of Lubbock v. Adams,* 149 S.W.3d 820, 824–25 (Tex.App.-Amarillo 2004, pet. filed) (holding "sue and be sued" in a city charter waives immunity from suit in accordance with *Missouri Pacific* and majority of courts of appeals' decisions); *City of Texarkana v. City of New Boston,* 141 S.W.3d 778, 787 (Tex.App.-Texarkana 2004, pet. dism'd) (finding the words "plead and be impleaded" in section 51.075 of the Local Government Code are synonymous with "sue and be sued" and that they "waive governmental immunity from suit in light of the Texas Supreme Court's decision in *Missouri Pacific* "); *Alamo Cmty. Coll. Dist. v. Browning Constr. Co.,* 131 S.W.3d 146, 154 (Tex. App.-San Antonio 2004, pet. filed) (holding "sue and be sued" language in Education Code clearly and unambiguously waives immunity from suit); *Goerlitz v. City of Midland,* 101 S.W.3d 573, 577 (Tex.App.-El Paso 2003, pet. filed) (explaining that immunity from suit was waived where city charter provided the city may "sue and be sued"); *Welch v. Coca–Cola Enters.,* 36 S.W.3d 532, 538 (Tex.App.-Tyler 2000, pet. withdrawn) (holding immunity from suit waived because Education Code provides school district trustees may "sue and be sued"); *Bates v. Tex. State Tech. Coll.,* 983 S.W.2d 821, 827 (Tex.App.-Waco 1998, pet. denied) (holding college's immunity from suit waived because Education Code provides college board may "sue or be sued"); *Engelman Irrigation Dist. v. Shields Bros.,* 960 S.W.2d 343, 348 (Tex.App.-Corpus Christi 1997) (concluding that "sue and be sued" language in Water Code section 58.098 "provided clear and unambiguous consent for the Irrigation District to be sued"), *pet. denied,* 989 S.W.2d 360 (Tex.1998) (per curiam); *Dillard v. Austin Indep. Sch. Dist.,* 806 S.W.2d 589, 594 (Tex. App.-Austin 1991, writ denied) (holding school's immunity from suit waived because Education Code provides school district trustees may "sue and be sued"); *see also Webb v. City of Dallas,* 314 F.3d 787, 795 (5th Cir. 2002) ("[T]he vast majority of [Texas] courts of appeals to address the express legislative waiver question in the context of similar 'sue and be sued' clauses follow *Missouri Pacific* as controlling Texas Supreme Court precedent."); *cf. City of Mexia v. Tooke,* 115 S.W.3d 618, 621–23 (Tex.App.-Waco 2003, pet. granted) (holding that language indicat-

refused to follow *Missouri Pacific* and, instead, have found "sue and be sued" and similar language is not a clear waiver of immunity from suit.[11] However, this Court aligns itself with the majority, and our most recent decisions indicate "sue and be sued" language is a sufficient pronouncement of legislative intent to waive immunity from suit.[12] More significantly, the Texas Supreme Court has not overturned or limited its holding from *Missouri Pacific*. Quite the contrary, the court recently held "we have little difficul-

ty recognizing the Legislature's intent to waive immunity from suit when a statute provides that a state entity *may be sued* ...." *Taylor*, 106 S.W.3d at 696–97 (emphasis added); *see also Travis County v. Pelzel & Assocs., Inc.*, 77 S.W.3d 246, 249–50 (Tex.2002) (holding that "sue and be sued" at least arguably shows intent to waive immunity from suits against counties).

■ In light of these considerations, and until the legislature or the supreme court dictate otherwise,[13] we hold section

---

ing the city can "plead and be impleaded" does not constitute clear and unambiguous waiver of immunity from suit, but recognizing that "sue and be sued" language provides the "requisite clarity to establish a waiver of immunity from suit"); *San Antonio Indep. Sch. Dist. v. City of San Antonio*, No. 04–03–00835–CV, 2004 WL 2450919, at *2–3 (Tex. App.-San Antonio Nov.3, 2004, pet. filed) (mem.op.) (holding language in section 11.151(a) of the Education Code stating the trustees of an independent school district may "sue and be sued" was a clear and unambiguous waiver of the district's immunity from suit);.

11. *See City of Roman Forest v. Stockman*, 141 S.W.3d 805, 813 (Tex.App.-Beaumont 2004, no pet.) ("In light of the recent emphasis by the Texas Supreme Court and the Texas Legislature on the necessity of 'clear and unambiguous' waiver, we find the 'sue and be sued' language in the Local Government Code provisions does not contain clear waiver of immunity language."); *City of Carrollton v. McMahon Contracting, L.P.*, 134 S.W.3d 925, 927–28 (Tex.App.-Dallas 2004, pet. filed) (concluding that "plead and be impleaded" language in Local Government Code does not waive immunity from suit); *City of San Antonio v. Butler*, 131 S.W.3d 170, 177 (Tex.App.-San Antonio 2004, pet. filed) (holding that "plead and be impleaded" language in Local Government Code and "sue and be sued" language in city charter do not waive immunity from suit in tort cases because they are governed by the Texas Tort Claims Act); *Satterfield & Pontikes Const., Inc. v. Irving Indep. Sch. Dist.*, 123 S.W.3d 63, 68 (Tex.App.-Dallas 2003, pet. filed) (holding "sue and be sued" language of the Education Code does not clearly and unambiguously waive school dis-

trict's immunity from suit); *City of Dallas v. Reata Constr. Corp.*, 83 S.W.3d 392, 398 (Tex. App.-Dallas 2002) (explaining that "sue and be sued" language refers to a city's capacity to sue when immunity has otherwise been waived), *rev'd on other grounds*, No. 02–1031, 47 Tex. Sup.Ct. J. 408, 2004 WL 726906, at *3 (Tex. April 2, 2004); *Jackson v. City of Galveston*, 837 S.W.2d 868, 871 (Tex.App.-Houston [14th Dist.] 1992, writ denied) (holding that "sue and be sued" language did not *impliedly* waive a city's immunity to suit, but see *City of Houston v. Clear Channel Outdoor, Inc.*, 161 S.W.3d 3, 6 (Tex.App.-Houston [14th Dist.] 2004, pet. filed) which declined to follow *Jackson*); *Townsend v. Mem'l Med. Ctr.*, 529 S.W.2d 264, 267 (Tex.Civ.App.-Corpus Christi 1975, writ ref'd n.r.e.) (holding that "sue and be sued" language did not "impliedly" waive a hospital district's immunity from suit); *Childs v. Greenville Hosp. Auth.*, 479 S.W.2d 399, 401 (Tex.Civ.App.-Texarkana 1972, writ ref'd n.r.e.) (relying on pre-*Missouri Pacific* cases to find a hospital district's immunity was not waived).

12. *See, e.g., Burlington N. & Santa Fe Ry. Co. v. City of Houston*, 171 S.W.3d 240, 244–45 (Tex.App.-Houston [14th Dist.] 2005, no pet. h.); *Columbus Indep. Sch. Dist. v. Five Oaks Achievement Ctr.*, 162 S.W.3d 812, 815 (Tex. App.-Houston [14th Dist.] 2005, pet. filed); *City of Angleton v. USFilter Operating Servs., Inc.*, No. 14–04–00603–CV, 2004 WL 2964016, at *1–2 (Tex.App.-Houston [14th Dist.] Dec. 23, 2004, pet. filed) (mem.op.).

13. The Texas Supreme Court currently has before it a number of petitions for review on this very issue. *See, e.g., MEB Eng'g, Inc.*, at

281.056(a) of the Health and Safety Code stating Harris County Hospital District's board of managers may "sue and be sued" is a sufficient pronouncement of the intent to waive immunity from suit. Therefore, Harris County's plea to the jurisdiction could not have been granted on the basis of governmental immunity. We now turn to the two additional arguments raised in Harris County's plea to the jurisdiction. *See generally In re H.E. Butt Grocery Co.,* 17 S.W.3d 360, 367 (Tex.App.-Houston [14th Dist.] 2000, orig. proceeding) (explaining that when, as here, a trial court's order does not state the grounds for granting a party's motion, the appellate court must review each of the grounds asserted and will affirm if any grounds are meritorious); *N. Am. Shipbuilding, Inc. v. S. Marine & Aviation,* 930 S.W.2d 829, 832 (Tex. App.-Houston [1st Dist.] 1996, no writ) (same).

*County Court Jurisdiction*

The second complaint in Harris County's plea is that the county courts have exclusive, original jurisdiction over any dispute involving a patient's ability to pay for healthcare. Harris County contends this matter ultimately involves a dispute over who must pay—including the patients' ability to pay—for medical treatment under section 281.071 of the Health and Safety Code. *See* TEX. HEALTH & SAFETY CODE ANN. § 281.071 (Vernon 2001).

Before reviewing the specific section cited by Harris County, we first recognize the constitutional presumption that a district court's jurisdiction "consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body." TEX. CONST. art. V, § 8. Moreover, district courts are courts of general jurisdiction and generally have subject matter jurisdiction *absent a showing to the contrary. In re Entergy Corp.,* 142 S.W.3d 316, 322 (Tex.2004) (citing *Dubai Petroleum Co. v. Kazi,* 12 S.W.3d 71, 75 (Tex.2000)). Therefore, we must determine whether Harris County sufficiently showed that the "Constitution or other law" conveys exclusive, appellate, or original jurisdiction on another court or administrative agency. *See* TEX. CONST. art. V, § 8; *In re Entergy Corp.,* 142 S.W.3d at 322.

Turning to section 281.071, our goal in construing the statute is to determine and

304, at *Clear Channel Outdoor, Inc.,* 161 S.W.3d at 4; *Adams,* 149 S.W.3d at 824–25; *City of Mesquite v. PKG Contracting, Inc.,* 148 S.W.3d 209 (Tex.App.-Dallas 2004, pet. filed); *City of Texarkana,* 141 S.W.3d at 787; *United Water Servs., Inc. v. City of Houston,* 137 S.W.3d 747 (Tex.App.-Houston [1st Dist.] 2004, pet. filed); *City of Carrollton,* 134 S.W.3d at 927–28; *Alamo Cmty. Coll. Dist.,* 131 S.W.3d at 154; *Satterfield,* 123 S.W.3d at 68; *Tooke,* 115 S.W.3d at 621–23; *Goerlitz,* 101 S.W.3d at 577; *Hirczy de Mino v. Univ. of Houston,* No. 03–03–00311–CV, 2004 WL 2296131, at *1–7 (Tex.App.-Austin Oct. 14, 2004, pet filed) (mem.op.); *City Of Houston v. Boyer, Inc.,* No. 01–04–00153–CV, 2004 WL 2186770, at *1–2 (Tex.App.-Houston [1st Dist.] Sep. 30, 2004, pet. filed) (mem.op.);

*City of Houston v. Jones,* No. 01–03–00831–CV, 2004 WL 1847965, at *1–2 (Tex.App.-Houston [1st Dist.] Aug. 19, 2004, pet. filed) (mem. op. on reh'g); *Dallas Fire Fighters Ass'n v. City of Dallas,* No 05–03–01787–CV, 2004 WL 1662945, at *1–4 (Tex.App.-Dallas Jul 27, 2004, pet. filed) (mem.op.). If the supreme court decides to utilize one of these cases as the avenue by which it overrules *Missouri Pacific,* then we should be inclined to revisit our decision today. However, until such time, we, as an intermediate appellate court, must not depart from controlling supreme court precedent. *See generally Webb,* 314 F.3d at 795 (refusing to deviate from the rationale of *Missouri Pacific* because it is "controlling Texas Supreme Court precedent.").

give effect to the Legislature's intent. *In re Entergy Corp.*, 142 S.W.3d at 322. When a statute's meaning is unambiguous, as we believe the meaning of 281.071 is, we interpret the statute according to the " 'plain and common meaning of the statute's words.' " *Id.* (quoting *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex.2003)). Here, section 281.071(e) unequivocally states:

> A county court of the county in which a patient's hospital is located shall hear and determine the ability of the patient or the patient's relatives to pay under this section *if there is a dispute over this ability to pay* or if there is doubt in the mind of the [hospital district] administrator over this ability. The court shall hear witnesses and issue any order that may be proper.

TEX. HEALTH & SAFETY CODE ANN. § 281.071(e) (emphasis added). Subsection (f) continues by providing that "[a]n appeal from an order of the county court must be made to a district court in the county in which the [hospital] district is located." *Id.* § 281.071(f). Harris County relies on these two provisions to support its claim that the county court, not the district court, had exclusive jurisdiction over the dispute. We disagree with Harris County's interpretation of the statute.

A closer examination of section 281.071 indicates it was intended to provide the method by which a healthcare provider can seek payment/reimbursement from a pa-

tient. Particularly considering the title of the section, "Payment and Support," and the fact that the remaining subsections provide for collection of payment from a patient, a patient's relatives, or a patient's estate. Accordingly, section 281.071 is inapplicable to this case. Here, the dispute is not over a patient's ability to pay for medical treatment, but rather, it involves two providers and their disagreement over which of the two is required to pay for treatment of patients *who already have been determined unable to pay.*[14] Therefore, after reviewing the statutory text of section 281.071 and construing the pleadings in the plaintiff's favor, we conclude that section 281.071 did not provide the county court with exclusive, original jurisdiction over the case.

*Texas Health Department*

 Alternatively, the final ground articulated in Harris County's plea to the jurisdiction is that the Texas Department of Health was vested with exclusive, original jurisdiction over a dispute like this one between a "provider of assistance," such as Tomball, and a governmental entity or hospital district. Harris County points to sections 61.004 and 61.059(e) of the Health and Safety Code to support this proposition. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 61.004, 61.059(e) (Vernon 2001 & Supp. 2004–05).

 Again we note that district courts are presumed to have general subject matter jurisdiction over disputes absent a showing to the contrary. *In re*

---

14. We recognize there is some evidence indicating Harris County eventually denied the Gold Card Holder status of several patients. Along with its "Response to [Tomball's] Motion for Interlocutory Summary Judgment," Harris County included one affidavit that claimed several of the patients were not *current* Gold Card Holders *at the time* they were treated by Tomball. However, these denials came long after Tomball filed its original peti-

tion and long after Harris County initially filed its answer and various motions for dismissal. Moreover, Harris County never contested the patients' ability to pay. As such, it appears this case stemmed originally from a disagreement about who was required to pay for the patients' treatment—Tomball or Harris County. The dispute over *patients' ability* came only as an afterthought.

*Entergy Corp.*, 142 S.W.3d 316, 322 (Tex. 2004) (quoting TEX. CONST. art. V, § 8). This same presumption does not apply to an administrative agency, which is provided with only those powers that are expressly conferred upon it by statute and that are necessary to achieve the intended function of the agency. *Id.* (citing *Subaru of Am. v. David McDavid Nissan*, 84 S.W.3d 212, 220 (Tex.2002); *Pub. Util. Comm'n v. GTE–Southwest, Inc.*, 901 S.W.2d 401, 407 (Tex.1995)). Therefore, a state agency such as the Texas Department of Health, has exclusive jurisdiction only where the Legislature has provided a " 'pervasive regulatory scheme . . . intended . . . to be the exclusive means of remedying the problem to which the regulation is addressed.' " *Id.* (quoting *Subaru of Am.*, 84 S.W.3d at 221). Accordingly, the Health and Safety Code language cited by Harris County is determinative of whether the Legislature created a "pervasive regulatory scheme intended to be the exclusive means" of adjudicating disputes like this one.

The specific provisions of the Health and Safety Code applicable to this case dictate:

> If a provider of assistance and a governmental entity or hospital district cannot agree on a person's residence or whether a person is eligible for assistance under this chapter, the provider or the governmental entity or hospital district may submit the matter to the [Health] department.

TEX. HEALTH & SAFETY CODE ANN. § 61.004(a).[15] Furthermore, sections 61.058 and 61.059 provide the procedure whereby a healthcare provider such as Tomball can notify and seek an eligibility determination from the hospital that otherwise should have treated the patient. *See id.* §§ 61.058–.059. More specifically, 61.059(e) states "[i]f the public hospital [i.e., Harris County] and the provider [i.e., Tomball] disagree on the patient's residence, the hospital or provider may submit the matter to the [Health] department as provided by Section 61.004." *Id.* § 61.059(e).

As we already have explained, Harris County's refusal to reimburse Tomball was never premised on the patients' residency or eligibility. This argument appears to have been inserted as an afterthought on appeal, particularly when we construe the pleadings in favor of the pleader—Tomball—as we are required to do. Accordingly, we disagree with Harris County's contention that the ultimate disagreement in this case involves the residency or eligibility of the patients treated at TRH. Therefore, after interpreting the statutory provisions cited, considering the exact nature of the claims filed by Tomball, and reviewing the issue as framed by the parties' original pleadings, we find *both* parties initially viewed this dispute as one over who was required to pay/reimburse for treatment of otherwise eligible Gold Card Holders. *See Columbus Indep. Sch. Dist.*, 162 S.W.3d at 816 (upholding a denial of the State's plea to the jurisdiction

---

**15.** Section 61.004(g) also states "[a] governmental entity, hospital district, or provider of assistance may appeal the final order of the [Health] department under Chapter 2001, Government Code, using the substantial evidence ruling on appeal." *Id.* § 61.004(g). Chapter 2001 of the Government Code sets out the procedures for administrative agencies to make rules and decide disputes, and it provides specific provisions governing judicial review and court enforcement of agency decision. *See* TEX. GOV'T CODE ANN. §§ 2001.001–.902 (Vernon 2000 & Supp.2004–05). We read nothing in section 61.004(g) as a removal of a district court's jurisdiction where the dispute involves which party, a hospital district or provider, must pay for treatment of a patient already determined to be an eligible resident.

because the parties' pleadings did not state a dispute which would fall within any exclusive jurisdiction of an administrative agency). Accordingly, we sustain Tomball's complaint that the trial court improperly dismissed the case for lack of jurisdiction.

The judgment of the trial court is reversed and this cause is remanded to the trial court.